**Mikele S. CARTER, Plaintiff–Appellee,**

v.

**CITY OF MIAMI, Jose Garcia–Pendrosa, Defendants–Appellants.**

**No. 87–5665.**

United States Court of Appeals, Eleventh Circuit.

April 19, 1989.

Arthur J. England, Jr., Fine Jacobson Schwartz Nash Block & England, Linda Ann Wells, Lucia A. Dougherty, City Atty., Leon M. Firtel, Miami, Fla., for defendants-appellants.

Sheridan Weissenborn, Papy, Weissenborn & Papy, Coral Gables, Fla., for plaintiff-appellee.

Before FAY and KRAVITCH, Circuit Judges, and LYNNE *, Senior District Judge.

LYNNE, Senior District Judge:

In July of 1984, Plaintiff–Appellee sued the City of Miami alleging violations of the Age Discrimination in Employment Act of 1967 [hereinafter ADEA], 29 U.S.C. § 621 et seq., and seeking damages for violation of Florida's age discrimination act. The jury found in favor of Appellee, and the district court awarded her back pay, future pay, and an increased annual pension. The City appeals the district court's denial of its motions for directed verdict and judgment notwithstanding the verdict. We reverse.

## I. FACTS

In June, 1961, Mikele Carter, a woman born August 31, 1933 [hereinafter Carter], was hired as a policewoman by the City of Miami Police Department. In 1973, she was admitted to the Florida Bar and transferred to the City of Miami Law Department. On March 30, 1983, she was fired.

In July of 1982, Jose Garcia–Pedrosa [hereinafter Pedrosa] was appointed City Attorney. Pedrosa evaluated and reorganized the staff after he assumed the position of City Attorney and by November, 1982, he had asked three attorneys to resign. They were all male and under forty years of age.[1] Two employees who were in the age group protected by the ADEA[2]

* Honorable Seybourn H. Lynne, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

1. During the whole of Pedrosa's tenure as City Attorney, six attorneys were asked to resign or

fired. With the exception of Carter, all were male and under 40.

2. Since January 1, 1978, the ADEA has protected persons between the ages of 40 and 70, inclu-

retired or resigned. One, a 62 year old woman whom Pedrosa had promoted from secretary to an administrative position, was given the choice of returning to secretarial work or retiring. She retired with full pension benefits. Another female secretary was asked to resign by Pedrosa at the insistence of the attorney for whom she worked because the attorney considered her incompetent.

Pedrosa also moved the offices to a new building and instituted various procedural reforms, such as requesting that staff members not shout in the office, requiring that attorneys keep track of their time and insisting that correspondence be free of typographical errors. Carter openly opposed these reforms: she accused Pedrosa of engaging in impropriety in leasing the new building and threatened grand jury action; she refused to account for her time, criticizing the requirement as a fraud; she took personal offense at Pedrosa's request that staff not shout at each other and in protest whispered to everyone in the office for two weeks; she impugned the character of and refused to work with a Ms. Dougherty, hired to be Deputy City Attorney, because Carter had wanted the position; and she maligned the Mayor and called his assistant a thief. Pedrosa testified that although he had considered firing Carter for these actions, he had instead tried to transfer her to the police department.

Around November, 1982, Pedrosa hired Ms. Gisella Cardonne, who was at that time thirty-two years old. Relying on a news account that Ms. Cardonne was hired to do appellate work, which was Carter's primary responsibility, Carter asked Pedrosa whether he intended to fire her. Pedrosa assured Carter that she was not being replaced. However, Carter remembered that in August of 1982 Pedrosa had commented in reference to a sixty-two year old Jewish secretary that he did not want his office run by "little old Jewish ladies" like his mother-in-law. From this remark and a purported comment by Pedrosa that Carter's secretary was too old and made too much money, Carter concluded that Pedrosa wanted to get rid of older employees like herself in order to cut costs.

Carter interpreted several of Pedrosa's actions as personal criticisms aimed at harassing her to retire. For example, she felt she was being harassed by Pedrosa's insistence that her correspondence go out in the correct envelope, by his insistence that she refrain from shouting in the office, and by his questioning of her use of secondary research aids in her briefs. She also drew this conclusion when the Deputy City Attorney asked her when she was planning to retire. In March of 1983, Pedrosa took offense at some remarks Carter had made at a University of Miami fundraiser and either fired her or offered to let her retire.[3] When Pedrosa came to see Carter at her office on March 30, 1983, Carter refused to speak with him without a witness present. Pedrosa considered this an act of insubordination and, when Carter insisted, told Carter to clear out her desk. Carter reverted to a position as police sergeant and remained there until her voluntary retirement on August 31, 1983. In April of 1983, Albertine Smith, a forty-six year old woman, was hired by the City Attorney's office to fill the vacancy created by Carter's departure.

Carter filed suit in state court on March 31, 1983, to enjoin the City from revoking her appointment in the City Attorney's office. The action was dismissed with prejudice and affirmed on appeal. *Carter v. Garcia–Pedrosa*, 442 So.2d 1022 (Fla.3d DCA 1983), *cert. denied*, 451 So.2d 847 (Fla.1984). Carter also filed a complaint with the Equal Employment Opportunity Commission, and on April 20, 1983, was notified of her right to institute a civil action. On July 19, 1984, Carter filed a

sive. 29 U.S.C. § 631(a). Before that time, protection ended at age 65.

3. Appellant contends that Pedrosa offered to let Carter retire or to facilitate her transfer to the police department and that Carter preferred to retire and agreed to do so on her first eligible date, August 31, 1983. Pedrosa had his secretary prepare the appropriate form and send it to Carter. Carter, on the other hand, contends that Pedrosa fired her on March 14.

complaint against the City and against Pedrosa, both individually and in his official capacity, alleging that her termination violated the ADEA, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., on grounds of sex and religious discrimination. Carter also charged violation of two corresponding Florida statutes, §§ 760.10(8)(b) and 112.044(4). On June 12, 1985, summary judgment was entered in favor of defendants on the civil rights claim, after which Carter dismissed all remaining claims against Pedrosa.

At the close of Carter's case, the court granted an involuntary dismissal of the sex discrimination count but denied defendant's motions for directed verdict under the ADEA and Title VII. At the close of all the evidence, the court denied the City's motions for involuntary dismissal of the religious discrimination claim and for directed verdict on the age discrimination claim. The court rendered judgment for Appellant on the religious discrimination claim, and the jury found in favor of Carter on the age discrimination claim.

The court awarded Carter $174,954.43 in back pay, $45,224.55 for future pay and $26,912.54 for economic benefits based on a stipulation by the parties as to when Carter would have retired had she not been fired. In addition, the district court increased Carter's annual pension from $30,422.88 to $56,045.52. Appellant's motions for judgment not withstanding the verdict and for new trial were denied, and this appeal ensued.

## II. STANDARD OF REVIEW

■ When considering whether or not a ruling on a motion for directed verdict or for judgment notwithstanding the verdict should be upheld, the standard of review to be applied by this Court is the same as that applied by the district court.[4] Thus, we consider all the evidence, and the inferences drawn therefrom, in the light most favorable to the nonmoving party.[5] If the facts and inferences point overwhelmingly in favor of one party, such that reasonable people could not arrive at a contrary verdict, then the motion was properly granted. Conversely, if there is substantial evidence opposed to the motion such that reasonable people, in the exercise of impartial judgment, might reach differing conclusions, then such a motion was due to be denied and the case was properly submitted to the jury.[6]

■ It bears repeating that a mere scintilla of evidence does not create a jury question. Motions for directed verdict and for judgment notwithstanding the verdict need not be reserved for situations where there is a complete absence of facts to support a jury verdict. Rather, there must be a substantial conflict in evidence to support a jury question.[7]

## III. DISCUSSION

### A. THE PRIMA FACIE CASE

Under the ADEA, a plaintiff claiming disparate treatment bears the ultimate burden of proving that age was a determining factor in the employer's decision to fire him or her.[8] Initially, a plaintiff must establish a prima facie case of discrimination through one of three generally accepted methods: by direct evidence of discriminatory intent; by meeting the four-pronged test set out for Title VII cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); or through statistical proof. Because Carter did not submit statistical evidence, we need only address the first two methods.

### 1. *Direct Evidence of Discrimination*

■ Direct evidence of discrimination would be evidence which, if believed, would

4. *Miles v. Tennessee River Pulp and Paper Co.,* 862 F.2d 1525 (11th Cir.1989) (citing *Neff v. Kehoe,* 708 F.2d 639, 641 (11th Cir.1983)).

5. *Miles,* 862 F.2d at 1527–28 (11th Cir.1989) (citing *Bonner v. City of Prichard* 661 F.2d 1206, 1209 (11th Cir.1981)).

6. *Miles,* 862 F.2d at 1527–28 (11th Cir.1989).

7. *Id.*

8. *Young v. General Foods Corp.,* 840 F.2d 825, 828 (11th Cir.1988); *Anderson v. Savage Laboratories, Inc.,* 675 F.2d 1221, 1224 (11th Cir.1982).

prove the existence of a fact without inference or presumption. *Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550, 1558 n. 13 (11th Cir.1988). In the face of direct evidence, an employer must prove that the same employment decision would have been made absent any discriminatory intent.[9]

▮ This Court has held that not every comment concerning a person's age presents direct evidence of discrimination. *Young*, 840 F.2d at 829. The *Young* Court made clear that remarks merely referring to characteristics associated with increasing age, or facially neutral comments from which a plaintiff has inferred discriminatory intent, are not directly probative of discrimination. *Id.* Rather, courts have found only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, to constitute direct evidence of discrimination.[10]

Here, the only remark presented by Carter which could be construed as direct evidence of discrimination was the "little old Jewish lady" comment made by Pedrosa. However, Carter admitted at trial that the remark was not directed at her. Furthermore, Carter interpreted the comment as directed toward the other employee's religion and her status as a mother-in-law, not her age. While such a comment may be "inappropriate and condescending," it clearly falls short of the type of evidence that this Circuit has recognized as direct evidence of discrimination. *See Young*, 840 F.2d 829; *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 611 (11th Cir.1987).

## 2. *The McDonnell Douglas Test*

▮ This Circuit has adopted a variation of the four-pronged test set out for Title VII claims in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), that allows a plaintiff to establish a prima facie case under the ADEA with circumstantial evidence by proving: (1) that he is a member of the protected group; (2) that adverse employment action was taken against him, e.g. discharge, demotion, or failure to hire; (3) that he was replaced by a person outside the protected group;[11] and (4) that he was qualified for the position for which he was rejected. *Castle v. Sangamo Weston*, 837 F.2d 1550, 1558 (11th Cir.1988); *Goldstein v. Manhattan Industries, Inc.*, 758 F.2d 1435, 1442 (11th Cir.), *cert. denied* 474 U.S. 1005, 106 S.Ct. 525, 88 L.Ed.2d 457 (1985) (quoting *Pace v. Southern Railway System*, 701 F.2d 1383, 1386 (11th Cir.), *cert. denied*, 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983)).

The City conceded at trial that Carter met the first three prongs of the test: that she was a member of the protected group, that she was a technically competent lawyer and that she was discharged. However, Appellant took the position at trial and afterward in its motion for judgment notwithstanding the verdict that Carter failed to satisfy the fourth prong by proving that she was replaced by an individual outside the protected group. Appellant argues that because Carter was replaced by a woman 46 years old and therefore within the protected class, she did not establish a

9. *Young*, 840 F.2d at 828; *Castle*, 837 F.2d at 1558 n. 13; *Buckley v. Hospital Corp. of America*, 758 F.2d 1525, 1529–30 (11th Cir.1985); *Bell v. Birmingham Linen Serv.*, 715 F.2d 1552, 1557–58 (11th Cir.1983).

10. *See, e.g., Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 610–11 (11th Cir.1987) (remark by personnel manager to terminated security guard that in order to transfer "you would have to take another physical examination and at your age, I don't believe you could pass it" did not constitute direct evidence of discrimination); *Lindsey v. American Cast Iron Pipe Co.*, 772 F.2d 799, 801 (11th Cir.1985) (supervisor's statement that plaintiff would not be considered for upcoming position because company would be looking for younger person than plaintiff constituted direct evidence of discrimination based on age); *Williams v. General Motors Corp.*, 656 F.2d 120, 129 (5th Cir. Unit B 1981) (scrap of paper on which was written "Too old-Lay Off" constituted direct evidence); *Simmons v. McGuffey Nursing Home, Inc.*, 619 F.2d 369, 371 (5th Cir.1980) (remark that board wanted younger man did not indicate that plaintiff was terminated because of his age).

11. This prong is treated with some flexibility in age discrimination cases, *see* discussion *infra* notes 12–14 and accompanying text.

prima facie case and the district court erred in allowing the case to go to the jury. The district court found that Carter was replaced by Ms. Cardonne, a woman thirty-two years old and thus outside the protected class. While Ms. Cardonne did take over two of the appeals that were being handled by Carter at the time Carter was discharged, the record clearly shows that Ms. Cardonne was hired at least four months before Carter was fired. The record further establishes that Carter's slot as an assistant city attorney was filled by Albertine Smith in April of 1983, shortly after Carter was fired. Thus, we find that Carter was replaced by Smith. Ms. Smith was forty-six years old at the time she was hired, placing her squarely within the protected class. However, this finding does not compel the conclusion urged by Appellant that Carter failed as a matter of law to prove her prima facie case.

■ Appellant's position fails to take into account this Court's repeated eschewal of an overly strict formulation of the elements of a prima facie case, especially in age discrimination cases.[12] Age, unlike race or sex, "is not a discreet and immutable characteristic of an employee which separates the members of the protected group indelibly from persons outside the protected group. Rather, age is a continuum along which the distinctions between employees are often subtle and relative ones." *Goldstein,* 758 F.2d at 1142. As

we recognized in *McCorstin v. United States Steel Corp.,* 621 F.2d 749, 754 (5th Cir.1980): "Seldom will a sixty-year-old be replaced by a person in the twenties.... [B]ecause the discrimination involves age, rather than sex or race, a requirement that the replacement be from a nonprotected group fails to take the reality of the working place into account."[13] Thus, we have declined to hold that a plaintiff's inability to show that he was replaced by someone under forty is an absolute bar to the establishment of a prima facie case. *See, e.g., Castle,* 837 F.2d 1550 (11th Cir.1988); *Goldstein,* 758 F.2d 1435 (11th Cir.1985); *Pace v. Southern Ry. Sys.,* 701 F.2d 1383 (11th Cir.), *cert. denied,* 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983); *McCorstin,* 621 F.2d 749 (5th Cir.1980).[14] To the contrary, the establishment of a prima facie case is essentially a factual question particular to the circumstances of a given case. *Goldstein,* 758 F.2d at 1443. The inquiry is whether an ordinary person could reasonably infer discrimination if the facts presented remained unrebutted. *Id.*

Because Carter did at least show that she was replaced by a younger person and viewing the evidence in the light most favorable to Carter, we hold that the district court did not err in finding that Carter had presented a prima facie case of age discrimination under the *McDonnell Douglas* test. Thus, it was not error for the district

---

**12.** The Supreme Court has stressed that the *McDonnell* test was not intended to be a rigid or ritualistic test of disparate treatment. *See, e.g., United States Postal Service Bd. of Govs. v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1982).

**13.** All decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981 are binding precedent on this Court. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981).

**14.** The need for increased flexibility in applying the prima facie criteria to age discrimination cases has been widely acknowledged in the courts. Some Circuits have stated explicitly that a plaintiff need only establish that he was replaced by a younger person. *See, e.g., Carden v. Westinghouse Electric Corp.,* 850 F.2d 996, 1000 (3d Cir.1988) (plaintiff must show replacement by younger person); *Furr v. AT & T Technologies, Inc.,* 824 F.2d 1537, 1542 (10th Cir.1987)

(plaintiff must show passed over for promotion in favor of younger person); *Diaz v. AT & T,* 752 F.2d 1356, 1359–60 (9th Cir.1975) (plaintiff need not be replaced by someone outside protected class); *Douglas v. Anderson,* 656 F.2d 528, 533 (9th Cir.1981) (third prong of test can be established by showing that plaintiff was replaced by substantially younger person); *Schwager v. Sun Oil Co.,* 591 F.2d 58 (10th Cir.1979) (plaintiff must show position filled by person younger than himself).

The First Circuit has held that a plaintiff attempting to prove a prima facie case of age discrimination need not even show that he was replaced by someone younger. *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1012–13 (1st Cir.1979) (*McDonnell Douglas* test did not contemplate requiring plaintiff to prove that person outside protected class was hired in complainant's place).

court to overrule the motion for directed verdict on the age discrimination count at the conclusion of plaintiff's case.

## B. REBUTTAL

■ Presentation of a prima facie case by a plaintiff raises a rebuttable inference of discrimination and shifts the burden of proof to the employer to respond with a legitimate, nondiscriminatory reason for dismissing the plaintiff. *Young*, 840 F.2d at 828.[15] Here, Appellant responded that Carter was discharged for insubordination, and presented testimony supporting its assertion that Carter was a constant disruptive force throughout her tenure at the City Attorney's office.[16] Carter admitted that she whispered around the office to mock Pedrosa's request that attorneys not shout; that members of the bench had called Pedrosa's predecessor to complain about Carter's courtroom demeanor; that she had made disparaging remarks in public about the Mayor, his assistant, and Pedrosa; that she had engaged in a scuffle in the office with a fellow employee over a pair of keys; that she had accused her co-workers and Pedrosa of immoral and illegal behavior; and that she had refused to speak with Pedrosa without a witness present. We believe that Appellant's ability to point to several specific acts of insubordination by Carter to Pedrosa, culminating in her refusal to speak with him without a witness, demonstrated a legitimate, nondiscriminatory reason for Pedrosa to fire Carter.

15. *Cf. supra* note 9 and accompanying text regarding defendant's higher burden of rebuttal in the face of direct evidence of discrimination.

16. For example, Appellant showed that Carter was openly critical of the administration of the first City Attorney for whom she worked, bringing charges of sex discrimination against him before the City Commission when she was denied a raise. Carter also criticized the second City Attorney for whom she worked (Knox), accusing him of playing chess and reading the newspaper during work hours and questioning his professional judgment. When Appellee was denied a raise by Knox because of her disruptive behavior, she again complained of sex discrimination.

## C. FAILURE TO ESTABLISH PRETEXT

■ Once a legitimate, nondiscriminatory reason for dismissal is put forward by the employer, the burden returns to the plaintiff to prove by significantly probative evidence that the proffered reason is a pretext for discrimination. *Young*, 840 F.2d at 829. A plaintiff may do so "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Goldstein*, 758 F.2d at 1445 (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981)). Carter contends that she met that burden by showing that her personnel file was devoid of a record of insubordination. Robert Clark, chief deputy city attorney, testified, however, that disruptive behavior was not as a rule entered in an employee's personnel file.

While Carter did not attempt formally to establish statistical evidence of discrimination, she did argue that discriminatory intent could be inferred from Pedrosa's personnel actions.[17] However, the record compels the opposite conclusion. Of the six attorneys fired by Pedrosa in his tenure, only Carter was in the protected age group.[18] Neither does the record support Carter's claim that three female employees in the protected class were fired. Rather, of all employees fired by Pedrosa, only Carter and the secretary described by her attorney as incompetent were in the protected class.[19] The third woman in the

17. Carter pointed out that up until the time she filed her EEOC complaint, Pedrosa had hired only attorneys under the age of 40. Of the two people hired by Pedrosa who were in the protected age group, one was hired only after the EEOC complaint. Also, Carter presented testimony that older secretaries perceived that younger secretaries received better treatment around the office.

18. *See supra* note 1.

19. Another Court has held specifically that termination of two employees in the protected age group within a nine month period is not statistically significant in a situation where other long term employees in the protected group were

protected class voluntarily retired in lieu of returning to secretarial work. Despite Carter's contention that Pedrosa intended to fire older employees in order to cut costs, no older males were fired.[20] Carter's subjective conclusion that Pedrosa harassed her and created any problems he had with her, without supporting evidence, was insufficient to establish pretext. "[C]onclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [an employer] has offered ... extensive evidence of legitimate, non-discriminatory reasons for its actions." *Young,* 840 F.2d at 830.

We find that there was not sufficient evidence from which a jury could have concluded that the reasons articulated by Appellant were merely a pretext for discrimination or that a discriminatory reason more likely motivated the employer.

## D. FAILURE TO PRESENT JURY QUESTION

Because Carter was unable to present significantly probative evidence of pretext, as a matter of law she was not entitled to go to the jury on her age discrimination claim and the district court should have granted Appellant's motion for a directed verdict at the close of all the evidence.

Carter argues, in reliance on *United States Postal Service Bd. of Governors v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403, that once a plaintiff has presented evidence of discrimination and a defendant has rebutted that evidence with a legitimate, nondiscriminatory reason for rejecting the plaintiff, a factual question has been presented which must be resolved by the trier of fact. The *Aikens* Court did instruct that once the defendant presents its rebuttal evidence, the district court should proceed directly to the question of "which party's explanation of the employer's motivation it believes." 460 U.S. at 716, 103 S.Ct. at 1482.

In *Young v. General Foods Corp.,* 840 F.2d 825 (11th Cir.1988), however, this Court clarified that the mere establishment of a prima facie case of discrimination does not foreclose the possibility of summary judgment in favor of an employer. *Id.* at 828. Neither does defendant's offer of a legitimate, nondiscriminatory reason for a discharge automatically present a jury question. *Id.* Simply stated, the presentation of a prima facie case creates a rebuttable presumption of discrimination, but does not alone establish a genuine issue of material fact sufficient to go to the jury. *Id.* at 829 (citing with approval *Pace v. Southern Ry. Sys.,* 701 F.2d 1383 (11th Cir.), *cert. denied* 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983)). Rather, "because the plaintiff bears the burden of establishing pretext, he must present 'significantly probative' evidence on the issue to avoid summary judgment." *Young,* 840 F.2d at 829 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986) (discussing standard for grant of summary judgment)). Here, Carter did not carry the burden of establishing pretext and thus did not create a question for the jury.

## IV. CONCLUSION

Because we find that Carter was unable to cast doubt on Appellant's legitimate, nondiscriminatory reason for firing her, she was not entitled to go to the jury on the age discrimination claim. It was error for the district court to overrule Appellant's motion for directed verdict on the age discrimination claim at the close of all evidence. Accordingly, and for the stated reasons, we REVERSE and REMAND to the district court with direction to enter a judgment for defendant.

---

maintained and a greater number outside the protected age range were fired. *Haskell v. Kamen Corp.,* 743 F.2d 113, 121 (2d Cir.1984).

**20.** For example, Robert Clark, a man in his 50's whose salary was higher than Carter's, was retained while 5 male attorneys under the age of 40 were fired. *See supra* note 1.