Charles A. ALPHIN,
Plaintiff–Appellant,

v.

SEARS, ROEBUCK & COMPANY,
Defendant–Appellee.

No. 90–3705.

United States Court of Appeals,
Eleventh Circuit.

Sept. 9, 1991.

Ross M. Goodman, Charles J. Kahn, Jr., Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A., Pensacola, Fla., for plaintiff-appellant.

Tracey I. Arpen, Jr., Jacksonville, Fla., for defendant-appellee.

Before TJOFLAT, Chief Judge, BIRCH, Circuit Judge, and HILL, Senior Circuit Judge.

HILL, Senior Circuit Judge:

In this action, brought pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., the appellant, a former employee of Sears, challenge the district court's award of summary judgment in favor of appellee. We reverse.

## FACTS

The appellant, Charles Alphin, commenced employment with appellee, Sears Roebuck, in July, 1956 at its Florence, Alabama store. In 1968, after twelve years' employment, appellant became "hard lines" merchandise manager, the third highest ranking position at appellee's store in Pensacola, Florida. In September, 1984, Alphin became the manager of the Sears Automotive Center in Pensacola. While Alphin managed the Automotive Center, Sears instituted a nation-wide reorganization and reduction of its management structure. Sears eliminated the merchandise manager positions, and replaced them with a limited number of sales manager positions. Sears then offered merchandise managers the option to retire early and receive certain benefits.

In June, 1985, Sears transferred Alphin from the Automobile Center back to the store; Alphin became the sales manager of the home appliances division. At that time, Alphin was not only the most senior, but the most highly paid, of the sales managers in the store. In January, 1986, the store manager, Fred Kelly, accorded Alphin an annual evaluation of "over all very good." The following month, Sears conducted its annual audit of the Pensacola store, and that audit disclosed several deficiencies through the store, including the home appliances division.

Sears disciplines its employees in part by implementing "corrective interviews" and issuing "Memos of Deficiency Interview" ("MDI"). Until 1986, Alphin had never experienced an interview or received an MDI; from April, 1986 through August, 1986, however, Kelly issued four MDIs to Alphin. Kelly, in later testimony, indicated six areas in which he found Alphin deficient during 1986: (1) home demonstrator procedure, (2) price reduction of clearance goods, (3) use of catalogue orders for appliance customers, (4) handling of maintenance agreement sales by sales floor personnel, (5) credit sales transactions procedures, and (6) inventory.

Alphin countered that these alleged problems were pretextual in nature. For example, the 1986 store audit criticized Alphin for keeping a Sears "home demonstrator" typewriter at his home for three days. Alphin, however, testified that other employees, including Kelly, took home these demonstrators without adverse results. One employee, in fact, Ray Bacot, Kelly's second-in-command, testified that an employee would not necessarily offend Sears policy by borrowing a demonstrator for up to two weeks.

Sears also criticized Alphin's reliance on the use of "catalogue sales." In March, 1986, Kelly counselled Alphin regarding his practice of ordering merchandise from the sales catalogue instead of from the Sears warehouse. On April 1, 1986, Kelly issued an MDI to Alphin indicating that Alphin's use of catalogue sales was "in violation of the Executive Standards Bulletin." This "Bulletin," however, never reached the Pensacola store until April 9, 1986. After April 1, moreover, Kelly never again counselled Alphin regarding the use of catalogue sales.

With regard to the other matters mentioned by Kelly, Alphin generally testified or produced evidence that the problems occurred during a period when Sears' profits were down, and that other employees shared his difficulties. He also produced evidence that, in some cases, he simply inherited problems from previous managers which improved after he assumed his new position. Alphin also showed that, as home appliances manager, he assumed a position formerly performed by two division managers. Finally, other employees testified favorably on behalf of Alphin.

According to Alphin, during the period that Kelly was issuing MDIs to him, Kelly also repeatedly suggested that Alphin resign. Alphin also testified that, in 1986, Kelly commented to him that "both of us had been around too long *and were too old* and were making too much money." (emphasis supplied). Alphin also stated that Kelly made this comment just after Alphin's first corrective interview. In September, 1986, Kelly discharged Alphin, then fifty years old, from his employment with Sears.

At the time of Alphin's discharge, Sears employed Giro Brigante, fifty-one years old, as a sales manager in its Fort Walker Beach store. Dave Davis, the regional personnel manager for Sears, understood that Brigante did not want Sears to transfer him to another store unless the transfer involved a promotion. Brigante testified that in September, 1986, his group manager nonetheless instructed him to accept the next position offered him, whether it involved a promotion or not, since Sears could replace him in the Fort Walton store for one-third of the salary he was then earning.

After Alphin's discharge, Davis offered the position to Brigante; Brigante accepted, although the position was lateral and involved no promotion. The group manager, Don Jones, introduced Brigante to a group of employees, stating "that with a lot of help from them, that I might make it in Pensacola." Brigante testified that the comment embarrassed him, stating, "Most of—half of these people were half as old as I was and ... I just had a difficult time facing them." Thus, after his initial visit to the Pensacola store, Brigante resigned rather than accept his transfer. The following day, Brigante attempted to recant his resignation, but a personnel manager informed him that Sears would not re-hire him. The next day Sears replaced Brigante at the Pensacola store within twenty-four hours with an employee described only as "over 40 years old." Sears replaced Brigante at its Fort Walton Beach store with a twenty-four year old trainee.

## PROCEEDINGS IN THE DISTRICT COURT

Alphin first initiated proceedings against appellee before the State of Florida commission on Human Relations, and both parties later stipulated that the proceedings of the Administrative Hearing would become a portion of the record of the United States District Court. In December, 1988, Alphin filed his Amended Complaint in the District Court for the Northern District of Florida.

Appellee then filed a Motion for Summary Judgment, arguing (1) that it discharged appellant for poor job performance, (2) the evidence failed to establish a prima facie case of age discrimination, (3) even if the court concluded that the evidence established a prima facie case of age discrimination, appellee made an appropriate showing of a legitimate, non-discriminatory reason for Alphin's discharge, and (4) Alphin failed to prove that appellee's articulated reasons for the discharge were pretextual. Alphin opposed the motion. In

June, 1990, the district court granted summary judgment on behalf of appellee. In its order, the court found that Alphin had produced no direct evidence of age discrimination, and predicted probable failure by Alphin to meet the circumstantial evidence test of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The court also concluded that Alphin failed to produce "significantly probative" evidence of pretext. The court accordingly entered final judgment in favor of appellee.

This appeal followed.

## DISCUSSION

■ Appellant now contends that the district court erred as a matter of law by issuing its order in favor of summary judgment. We agree.

We note at the outset that a court may grant a motion for summary judgment only when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. A material fact is one which "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citation omitted).

On a motion for summary judgment, a court must review the record, and all its inferences, in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

The district court concluded that Alphin's evidence was insufficient to create a prima facie case. We might agree with the district court that Alphin's evidence might not constitute a strong showing of discrimination on the basis of age. We need not, however, determine the "ultimate factual issue in this case[:] . . . whether age was a determinative factor in the [employer's] treatment of [plaintiff]." *O'Donnell v. Georgia Osteopathic Hosp. Inc.*, 748 F.2d 1543, 1549 (11th Cir.1984). Today we hold only that Alphin's evidence sufficed to create a prima facie showing of age discrimination.

"To establish a prima facie case of discrimination, the plaintiff must produce sufficient evidence to support an inference that the defendant employer based its employment decision on an illegal criterion." *Halsell v. Kimberly–Clark Corp.*, 683 F.2d 285, 290 (8th Cir.1982), *cert. den.* 459 U.S. 1205, 103 S.Ct. 1194, 75 L.Ed.2d 438 (1983). In this Circuit we have "repeated[ly] eschew[ed] . . . an overly strict formulation of the elements of a prima facie case, especially in age discrimination cases." *Carter v. City of Miami*, 870 F.2d 578, 583 (11th Cir.1989). At this stage, our inquiry is simply "whether an ordinary person could reasonably infer discrimination if the facts presented remained unrebutted." *Carter*, 870 F.2d at 583.

Plaintiffs may establish prima facie cases of age discrimination in three ways: (1) by presenting direct evidence of discriminatory intent, (2) by meeting the so-called *"McDonnell Douglas"* test, or (3) by demonstrating a statistical pattern of discrimination. *See Earley v. Champion Int'l. Corp.*, 907 F.2d 1077, 1081 (11th Cir.1990). Only the first two methods concern us today.

### A. *Direct Evidence*

■ As direct evidence of discriminatory intent, Alphin alleges that store manager Kelly commented to him "that both of us had been around too long and were too old and were making too much money." The district court found the comment "an observation on the state of the market for management personnel—more specifically, an observation on the effects of competition from more junior employees in that market." We are not so sure. We agree that the comment does not furnish direct

evidence of discriminatory intent; in our view, it is ambiguous. Since the alleged statement, "at most, *suggests* discrimination, leaving the trier of fact of *infer* discrimination based on the evidence[,] by definition then, the evidence is circumstantial." *Earley*, 907 F.2d at 1082. (emphasis in original).

## B. *Circumstantial Evidence*

 In cases such as this based on circumstantial evidence, courts generally employ a variant of a *McDonnell Douglas* analysis. See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). A plaintiff can establish a prima facie case by showing (1) that he was in a protected age group and was adversely affected by an employment decision, (2) that he was qualified for his current position or to assume another position at the time of discharge or demotion, and (3) evidence by which a fact finder might reasonably conclude that the employer intended to discriminate on the basis of age in reaching the decision at issue. *See Earley*, 907 F.2d at 1082. Our focus here concerns the latter two elements of this quasi-*McDonnell Douglas* test.

In our view, Alphin presented sufficient evidence to establish a prima facie showing of age discrimination. In reaching this determination, we note first that Kelly's remark that Alphin was "too old," although ambiguous, certainly supports a showing of discriminatory intent if we interpret the remark in the light most favorable to Alphin.

We also note that Alphin presented a history of favorable job evaluations from Sears until he assumed his position as the sales manager of the home appliances division. Although testimony conflicted on this issue, several co-workers commented positively on Alphin's job performance. Alphin presented testimony, moreover, that Sears disciplined him for offenses which it ignored in others.[1] In this regard, we note especially the suspicious timing of the "MDI" that Alphin received on April 1—a memorandum which disciplined Alphin for a practice in violation of an "Executive Standards Bulletin" which his store did not receive until April 9.

 Alphin also presented evidence which, although convoluted, suggested that Sears may have used the opportunity presented by his discharge to eliminate another employee, Brigante, within the protected age group. Although "we have declined to hold that a plaintiff's inability to show that he was replaced by someone under forty is an absolute bar to the establishment of a prima facie case," we have generally required plaintiffs to prove at least that an employer replaced them with a younger employee. *Carter v. City of Miami*, 870 F.2d at 578. Nonetheless, under the special factual circumstances of this case, we agree that Alphin's allegations that Sears transferred Brigante to Alphin's position as part of a strategy to eliminate two employees from the protected group, would also constitute a showing of discrimination on the basis of age.

 We emphasize that Alphin's evidence, although interesting, is in no sense dispositive of the allegations of age discrimination which he asserts. We also stress that we do "not sit as a super-personnel department that reexamines an entity's business decisions." *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir. 1986), cert. den. 479 U.S. 1066, 107 S.Ct. 954, 93 L.Ed.2d 1002 (1987). Sears' business judgment—its decision to restructure its management program—does not concern us. Alphin's competence in his work, moreover, although relevant, remains only a small part of our inquiry. Our real interest lies in whether Alphin produced sufficient evidence to demonstrate an actual

---

1. As we have held previously, "a plaintiff, in order to prove the employer's justification to be pretextual, must show either that he did not violate the work rule or that, if he did, other employers not within the protected class who engaged in similar acts were not similarly treated." *Anderson v. Savage Laboratories, Inc.*, 675 F.2d 1221, 1224 (11th Cir.1982). In *Anderson*, however, we characterized the "work rule" test as part of the plaintiff's burden of proving pretext, rather than as a component of his prima facie case. *Anderson*, 675 F.2d at 1224, n. 4.

intent on the part of Sears to discriminate on the basis of age.

So far, at least, the evidence by no means establishes Alphin's allegations. Alphin *has* established, however, his prima facie case, and he has demonstrated that the evidence conflicts on important issues of material fact. We agree with Alphin, therefore, that a jury should resolve the underlying factual disputes in this matter, in order to determine whether Sears' perception of Alphin's conduct, or discriminatory intent, motivated his discharge.

## CONCLUSION

We REVERSE the grant of summary judgment by the district court.

REVERSED.