**GREENTREE FINANCIAL GROUP, INC., Plaintiff,**

v.

**LONG FORTUNE VALLEY TOURISM, et al., Defendants.**

**Case No. 11–60292–CIV.**

United States District Court, S.D. Florida.

May 11, 2011.

Charles Merrill Eiss, Law Offices of Charles Merrill Eiss, Weston, FL, Mark Howard Shore, Fort Lauderdale, FL, for Plaintiff.

John Edward Lucian, Blank Rome, Philadelphia, PA, Inbal Paz, James V. Masella, III, Blank Rome, LLP, New York, NY, Jared S. Gillman, Linkhorst & Hockin, P.A., Jupiter, FL, Patrick D. Souter, Scott B. Aston, Looper Reed & McGraw, P.C., Dallas, TX, John Alexander Hockin, Linkhorst & Hockin PA, Palm Beach Gardens, FL, for Defendants.

## ORDER ON MOTIONS TO DISMISS AND MOTION FOR MORE DEFINITE STATEMENT

URSULA UNGARO, District Judge.

THIS CAUSE is before the Court upon Defendant Halter Financial Investments, L.P.'s Motion to Dismiss Amended Complaint and, in the Alternative, Motion for More Definite Statement. (D.E. 24.) Plaintiff filed a Memorandum in Opposition to Defendant's Motion (D.E. 35), to which Defendant Halter replied (D.E. 41). The Motion is ripe for review.

THE COURT has considered the Motion and the pertinent portions of the record and is otherwise fully advised in the premises.

## I. Background

In its Amended Complaint, Plaintiff Greentree Financial Group, Inc. (Greentree) claims Defendants Long Fortune Valley Tourism, Ltd. (Long Fortune) and BTHC VX, Inc. (BTHC) breached the terms of a service agreement and Defendant Halter Financial Investments, L.P. (Halter) tortiously interfered with the business relationship between Greentree and Long Fortune. Greentree claims damages, interest, attorney's fees and costs against all Defendants.[1]

### A. Parties

Greentree is a corporation organized and existing under and by virtue of the laws of the State of Florida with its principal place of business in Broward County, Florida. (Am. Compl. ¶ 1.) Long Fortune is a foreign corporation registered in Grand Cayman, Cayman Islands. (*Id.* ¶ 3.) BTHC is a corporation organized and existing under and by virtue of the laws of the State of Delaware. Defendant Halter is a limited partnership, organized and existing under and by virtue of the laws of the State of Texas. (*Id.* ¶ 4.)

### B. The Service Agreement and the Share Exchange Agreement[2]

Greentree and Long Fortune entered into a Service Agreement dated September 1, 2010. (*Id.* ¶ 8.) Pursuant to the terms of the Service Agreement, Greentree agreed to perform various consulting services for Long Fortune, including assisting

---

1. On May 10, 2011, the Court was advised by the parties that Greentree had settled its claims against Defendants Long Fortune and BTHC.

2. Plaintiff appended the Service Agreement and the Share Exchange Agreement, discussed below, in their entireties to the Complaint and incorporates the documents by reference in the Amended Complaint.

in the completion of a proposed reverse takeover. (*Id.* Ex. A ¶ 1.) In exchange for its services, Long Fortune agreed to pay Greentree in cash and stock of the proposed public company upon and following the anticipated reverse takeover. (*Id.* Ex. A ¶ 2.) The term of the Service Agreement began on the date of signing and extended until August 30, 2011. (*Id.* Ex. A ¶ 3.)

On or about October 6, 2010, Long Fortune entered into a Share Exchange Agreement with BTHC. (*Id.* ¶ 13.) The Share Exchange Agreement provided that, at closing, the shareholders of Long Fortune would transfer all the issued and outstanding shares of Long Fortune to BTHC in exchange for 95 percent of the outstanding shares of BTHC. (*Id.* Ex. B, pp. 1 & 8.)

### C. The Lawsuit

In its Amended Complaint, Greentree claims that, "by entering into [the Share Exchange Agreement], Long [Fortune] and its successor BTHC materially and wrongfully breached and terminated the [Service A]greement" (Count One). Greentree further claims that Defendant Halter had full knowledge of the business relationship between Greentree and Long Fortune and notwithstanding this knowledge, tortiously interfered with the relationship, causing Long Fortune to breach the Service Agreement (Count Two).[3]

Halter moves to dismiss Count Two of the Amended Complaint and, in the alternative moves for a more definite statement, arguing that (i) the Court lack personal jurisdiction over Halter; (ii) the Amended Complaint fails to state a claim for tortious interference; and (iii) the Amended Complaint is so vague that Halter cannot reasonably prepare a response or defenses.

### II. Personal Jurisdiction

A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction. *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir.1999) (per curiam). "A *prima facie* case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict."[4] *Meier*, 288 F.3d at 1268–69 (citations omit-

---

3. In Count Two, Greentree claims that Defendant Halter "intentionally and unjustifiably interfered with the agreement and business relationship between Plaintiff and Long by causing Long to breach and/or wrongfully terminate its agreement with *Long.*" (Am. Compl. ¶ 18) (emphasis added). For the purpose of this Order, the Court presumes Greentree intended to allege that Halter caused Long to breach and/or wrongfully terminate its agreement with *Greentree.*

4. When considering a motion for directed verdict, a court must "consider all the evidence, and the inferences drawn therefrom, in the light most favorable to the nonmoving party." See *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir.1989) (footnote omitted).
 If the facts and inferences point overwhelmingly in favor of one party, such that rea-

sonable people could not arrive at a contrary verdict, then the motion [should be] granted. Conversely, if there is substantial evidence opposed to the motion such that reasonable people, in the exercise of impartial judgment, might reach differing conclusions, then such a motion is due to be denied. It bears repeating that a mere scintilla of evidence does not create a jury question. Motions for directed verdict and for judgment notwithstanding the verdict need not be reserved for situations where there is a complete absence of facts to support a jury verdict. Rather there must be a substantial conflict in evidence.
 *Id.* (footnote omitted).

ted). Where the defendant "challenges jurisdiction by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.,* 593 F.3d 1249, 1257 (11th Cir.2010) (citations omitted). "[W]here the evidence presented by the parties' affidavits and deposition testimony conflicts, the court must construe all reasonable inferences in favor of the nonmovant plaintiff." *Morris,* 843 F.2d at 492.

■ A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (i) be appropriate under the state long-arm statute and (ii) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *United Techs. Corp. v. Mazer,* 556 F.3d 1260, 1274 (11th Cir.2009). Florida's long-arm statute provides that any person may subject himself to the jurisdiction of the courts of the state either as a result of substantial and not isolated activity within the state, whether or not the claim arises from that activity (general jurisdiction), or by committing any of several enumerated acts when the cause of action arises from the commission of such act (specific jurisdiction). Fla. Stat. § 48.193.

Defendant Halter contends that Count Two of the Amended Complaint must be dismissed because the Court lacks personal jurisdiction over it. In the Amended Complaint, Greentree asserts no facts to support the exercise of general jurisdiction over Halter under Florida's long-arm statute. (*See* Am. Compl.) The only possible basis for the Court's exercise of personal jurisdiction over Halter is based on Green-

tree's allegation that Halter tortiously interfered with Greentree's business relationship with Long Fortune. The Court finds, however, for the reasons below, that Greentree has also failed to allege or otherwise present facts sufficient to support the exercise of specific personal jurisdiction over Halter.

Florida's long-arm statute provides that any person who commits a tortious act *within the state* submits himself to the jurisdiction of the courts of the state for any cause of action arising from the act. Fla. Stat. § 48.193(1)(b) (emphasis added). The substance of Greentree's allegation of tortious interference in Count Two is that Defendant Halter "had full knowledge of the business relationship and agreements between Long [Fortune] and Plaintiff.... Notwithstanding its knowledge of the agreement and business relationship between Long [Fortune] and Plaintiff, Halter intentionally and unjustifiably interfered with the agreement and business relationship...." (Am. Compl. ¶¶ 17 & 18.) The Amended Complaint contains no further allegations to support a claim that Halter committed the alleged tortious act *within the state of Florida.* Thus, the only conceivable basis for personal jurisdiction is that the alleged tortious act caused a harm suffered in Florida, in that Plaintiff Greentree is a Florida corporation.

The Florida intermediate appellate courts have split on the question of the appropriate interpretation of Section 1(b) of the long-arm statute, and the Florida Supreme Court has not reconciled the conflict. Some courts have narrowly interpreted the provision and held that there is no jurisdiction over one who commits a tortious act outside the state that results in injury within Florida. *E.g. Tex. Guaranteed Student Loan Corp. v. Ward,* 696

So.2d 930, 932 (Fla. 2d DCA 1997); *Mc-Lean Fin. Corp. v. Winslow Loudermilk Corp.,* 509 So.2d 1373, 1374 (Fla. 5th DCA 1987). Others have exercised jurisdiction so long as the injury caused by the tortious act was suffered within the state. *E.g. Wood v. Wall,* 666 So.2d 984, 986 (Fla. 3d DCA 1996); *Allerton v. State Dep't of Ins.,* 635 So.2d 36, 40 (Fla. 1st DCA 1994). While Greentree urges the Court to adopt this broader reading, the Court need not reach the issue, because even if Greentree has alleged sufficient facts to support the exercise of specific jurisdiction over Halter under Florida's long-arm statute, there is no factual basis to support a finding that the exercise of jurisdiction over Halter comports with the due process requirements of the Fourteenth Amendment.

■ To satisfy the due process requirement, there must exist "minimum contacts" between the nonresident defendant and the forum state, such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The Eleventh Circuit has adopted a three-part test to determine whether the minimum contacts requirement is met: first, the contacts must be related to the plaintiff's cause of action; second, the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum; and third, the defendant's contacts must be such that the defendant should reasonably anticipate being haled into court there. *Posner,* 178 F.3d at 1220.

■ The Amended Complaint contains no factual allegation that Halter had any contacts with the State of Florida, whether or not related to its alleged tortious act; likewise, the Amended Complaint includes no allegation that Halter in any other way availed itself of the privilege of conducting activities within the state. (*See* Am. Compl.) Moreover, Halter has appended to its Motion to Dismiss the affidavit of George Diamond, who attests as follows:

> I am the Secretary of Halter Financial Investments, GP, LLC, which is the general partner of Halter Financial Investments, L.P. ("HFI"). I am also a principal in both Halter Financial Investments, GP, LLC and HFI and have held all of the above-described positions since September 2005. In those capacities, I am familiar with all of HFI's business activities.

> \* \* \*

> HFI does not have and has never had, any contact with the State of Florida. Neither HFI nor its General and Limited Partners does business in the State of Florida. HFI and its General and Limited Partners do not advertise in Florida, do not maintain an office in Florida, do not have employees in Florida, do not lease or own property in Florida, do not have bank accounts in Florida, and do not sell or distribute products or provide services to any person in Florida. To my knowledge, no principal or agent of HFI has ever directed communications to or contracted with any person or entity in the State of Florida on HFI behalf. To my knowledge, no principal or agent of any of HFI General or Limited Partners has ever directed communications to or contracted with any person or entity in the State of Florida on HFI behalf.

(D.E. 24 Ex. A.)

In its Response, Greentree entirely fails to address Halter's argument that the req-

uisite minimum contacts do not exist between Halter and the State of Florida. (*See* D.E. 35.) And though Greentree has appended to its Response the affidavit of one of its employees, the affidavit also entirely fails to meet or address Halter's sworn statements that it lacks the requisite contacts with Florida. (*See* D.E. 35–1.) As such, Greentree has failed to allege or otherwise produce sufficient evidence to support the Court's exercise of personal jurisdiction over Halter.

## III. Conclusion

For the reasons stated above, it is

ORDERED AND ADJUDGED that Defendant Halter's Motion to Dismiss (D.E. 24) is GRANTED: Count Two is DISMISSED and Defendant Halter is terminated as a party to this action.