[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-13174
Non-Argument Calendar
_____

D.C. Docket No. 9:15-cv-80486-BB

WILBUR VEASY,

Plaintiff-Appellant,

versus

SHERIFF OF PALM BEACH COUNTY,
Ric L. Bradshaw,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 14, 2018)

Before ED CARNES, Chief Judge, WILLIAM PRYOR, and ANDERSON, Circuit
Judges.

PER CURIAM:

Wilbur Veasy appeals the district court's grant of summary judgment in favor of his former supervisor, Sheriff Ric Bradshaw of the Palm Beach County Sheriff's Office.

## I.

Veasy was hired by the Sheriff's Office in 1987 as a corrections officer for the Palm Beach County Jail.[1]  Over the next 25 years he was subject to multiple disciplinary actions, including insubordination offenses in 1996, 2005, 2008, 2011, 2012, and 2013.  The last of those offenses resulted in his termination.

The Sheriff's Office written policy states that an employee has four hours to report to Internal Affairs to provide a urine sample after being randomly selected for a drug test.  If the employee refuses to submit, fails to appear when directed, refuses to sign any necessary consent forms, or tampers with a random test, he is subject to discipline, up to and including termination for a first offense.  In November 2011 the Sheriff's Office stopped accepting urine samples at Internal Affairs and instead required all employees to travel to a third party, Coach Comp, for drug testing.  On February 5, 2013, the secretary for the Sheriff's Office Division of Internal Affairs notified Veasy that he had been randomly selected for a drug test.  At that point, over 250 corrections employees had submitted to a drug test at Coach Comp.  But the Sheriff's Office written policy remained the same.

---

[1] Because Sheriff Bradshaw moved for summary judgment, we view the facts in the light most favorable to Veasy.  Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999).

Unaware of the change, Veasy went to Internal Affairs for his drug test. When he arrived Sergeant Brett Combs ordered him to report to Coach Comp, but Veasy refused, arguing that under the written policy he was not required to use his personal vehicle to travel to a testing facility. He asked to drive an official vehicle, but Sergeant Combs refused. He then again ordered Veasy to report to Coach Comp in his personal vehicle. And when Veasy again refused, the matter was escalated to Sheriff Bradshaw, who gave Veasy two options: either drive to the test site in his personal vehicle or be placed on administrative leave. Veasy responded that his "2007 red four door Tacoma is not going." Sheriff Bradshaw placed him on administrative leave.

Internal Affairs conducted an investigation into the incident and concluded that Veasy had violated two office rules and regulations: (1) failing to comply with a direct order from investigators and supervisors, and (2) refusing to submit to a random drug test. Captain Frank Milo reviewed the results of the investigation, considered Veasy's prior disciplinary history, and recommended termination. Sheriff Bradshaw agreed, and after a pre-disciplinary hearing Veasy was fired on April 13, 2013.

Two years later he brought this employment discrimination suit, 42 U.S.C. §§ 1981 and 1983, alleging that Sheriff Bradshaw's proffered reason for firing him was pretext for race discrimination. The district court granted summary judgment

3

in favor of Sheriff Bradshaw, finding that he was entitled to Eleventh Amendment immunity.  Veasy appealed, and we reversed and remanded.  On remand, the district court granted Bradshaw's renewed motion for summary judgment, finding that Veasy failed to show the Sheriff's legitimate reasons for firing him were pretext for race discrimination.[2]  This is Veasy's appeal.

## II.

We review de novo the district court's grant of summary judgment.  Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1263 (11th Cir. 2010).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

Veasy contends that the district court erred by granting summary judgment in favor of Sheriff Bradshaw on his race discrimination claim.  Section 1981 prohibits race discrimination in connection with the performance of a contract.  42 U.S.C. § 1981(a); see also Standard v. A.B.E.L. Servs. Inc., 161 F.3d 1318, 1330–34 (11th Cir. 1998) (reviewing discriminatory termination claim under § 1981).  Because § 1981 does not provide a cause of action against state actors, 42 U.S.C. § 1983 is the exclusive federal remedy for violation by state actors of the rights

---

[2] Veasy also brought a retaliation claim, which the district court disposed of in the Sheriff's favor.  Although Veasy references that claim in his issue statement and facts, he makes no mention of it in the argument section of his brief, so it is abandoned.  Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 681–82 (11th Cir. 2014).

guaranteed under § 1981.  See Butts v. County of Volusia, 222 F.3d 891, 894–95 (11th Cir. 2000).

Absent direct evidence of discrimination, courts apply the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–04, 93 S. Ct. 1817, 1824–25 (1973), when evaluating discrimination claims under § 1981 and § 1983.  See Richardson v. Leeds Police Dep't, 71 F.3d 801, 805–06 (11th Cir. 1995); Standard, 161 F.3d at 1331.  "Under that framework, the plaintiff must first establish a prima facie case of discrimination, typically by showing that she was a qualified member of a protected class" and that she was "subjected to an adverse employment action in contrast to similarly situated employees outside the protected class."  Alvarez, 610 F.3d at 1264.  If she does, then the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its action. Id.  If it does, the burden shifts back to the plaintiff to show that the employer's proffered reason is actually pretext for discrimination.  Id.

We assume without deciding that Veasy has made out a prima facie case for discrimination.  Sheriff Bradshaw articulated a legitimate, non-discriminatory reason for Veasy's termination — that Veasy repeatedly refused to comply with a direct order from Sergeant Combs to go to Coach Comp for drug testing, and that incident was one in a long line of insubordination offenses.  See Carter v. City of Miami, 870 F.2d 578, 584 (11th Cir. 1989) (concluding that an employer

5

"demonstrated a legitimate, nondiscriminatory reason" for firing an employee when he "point[ed] to several specific acts of insubordination" by the employee). That leaves pretext.

To prove pretext Veasy must show that Bradshaw's proffered reason is so weak, implausible, inconsistent, incoherent, or contradictory that a reasonable factfinder could find the reason unworthy of credence.  Alvarez, 610 F.3d at 1265. Employers may fire an employee for "a good reason, a bad reason, a reason based on an erroneous fact, or for no reason at all, as long as its action is not for a discriminatory reason."  Chapman v. Al Transport, 229 F.3d 1012, 1031 (11th Cir. 2000).  Veasy argues that Bradshaw's reasons are pretext because Veasy did not violate the written drug test policy, Bradshaw deviated from proper procedures, and Bradshaw treated more leniently two similarly situated white employees. Those arguments fail.

First, Veasy argues that he did not violate the Sheriff's Office drug testing policy because he arrived at Internal Affairs prepared to give a urine sample, and that is all that the written policy requires.  Although an employee who is terminated based on allegations of misconduct may demonstrate pretext by showing that he did not engage in the insubordinate conduct, see Muñoz v. Oceanside Resorts, Inc., 223 F.3d 1340, 1345 (11th Cir. 2000), Veasy was insubordinate.  Even though the Sheriff's Office written policy requires selected

employees to report to Internal Affairs, the office unofficially changed its policy a year and half before Veasy was selected. Veasy admits that he refused to travel to Coach Comp to take a drug test in compliance with that policy. He also admits that he refused two direct orders from a supervisor in violation of a different rule.

Next, Veasy argues that Bradshaw violated Sheriff's Office policies and procedures by considering his past conduct because the policy states that "[m]ajor infractions that occurred more than three years prior to the current infraction should be disregarded" when making disciplinary decisions. Although "[d]epartures from normal procedures may be suggestive of discrimination," Morrison v. Booth, 763 F.2d 1366, 1374 (11th Cir. 1985), Veasy has not shown that Bradshaw departed from the procedures laid out in the policy because the policy also requires supervisors to "be alert to prior misconduct which indicates a trend." And in any event, two of Veasy's past insubordination offenses had occurred in the three years leading up to his termination.

Last, Veasy argues that Bradshaw gave preferential treatment to two similarly situated white deputies. Comparator evidence has relevance at the pretext stage. Rioux v. City of Atlanta, 520 F.3d 1269, 1277 (11th Cir. 2008). In determining whether employees are similarly situated, "it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." Holifield v. Reno, 115 F.3d 1555, 1562

7

(11th Cir. 1997).  Neither of Veasy's comparators was similarly situated.

The first deputy, like Veasy, refused a direct order from a superior to submit to a breathalyzer test after he was suspected of driving under the influence in his work-issued vehicle.  And like Veasy, that deputy was terminated.  But before the termination became final the Palm Beach County Police Benevolent Association, a police union, intervened and presented extenuating circumstances for the deputy's refusal.  It negotiated a settlement on the deputy's behalf, and instead of termination, he was suspended for 80 hours without pay.  Bradshaw explained that he agreed to the settlement because he "thought there was some reasonable extenuating circumstance."  He also stated that the deputy "did not have any prior history of refusing a direct order.  Any insubordination."  In contrast Veasy was not a member of the union, did not offer to settle, and had an extensive history of insubordination.[3]

The second deputy comparator was asked to submit to a drug test after he was suspected of stealing narcotics.  He responded that he could not because he

---

[3] Veasy argues that Sheriff Bradshaw cannot rely on Veasy's past conduct as a distinguishing factor because Bradshaw did not consider any evidence of past conduct at the time he made the decision to fire him.  Veasy notes that in Bradshaw's deposition the Sheriff states only that he fired Veasy for violating Sheriff's Office rules.  But that testimony does not mean that Bradshaw did not also consider Veasy's prior history.  Other evidence shows that Bradshaw reviewed, signed, and concurred in Captain Milo's recommendation, which outlined Veasy's disciplinary history and suggests termination "[b]ased on th[at] disciplinary history."  And Bradshaw later asserted that even if the police union had approached him he would not have rescinded Veasy's termination because Veasy has a "record of discipline for other insubordination offenses."

was "en route to a [treatment] facility." At first his superior told him to remain at his house, so that he could give a sample before leaving for treatment, but later the superior told him not to "worry about the urine sample, [and] just go to [his] treatment facility." When he failed a drug test at the facility, he was disciplined for possessing a controlled substance without a prescription and for conduct unbecoming a member of the Sheriff's Office. Like the first deputy, he had no history of insubordinate conduct. And unlike Veasy, he was not disciplined for refusing to submit to a drug test or failing to follow a direct order, but instead for failing a drug test. Those distinctions show that neither deputy was similarly situated to Veasy. See Holifield, 115 F.3d at 1562–63.

When the facts are viewed in the light most favorable to Veasy, he has not shown that his termination was the product of race discrimination. The district court did not err by granting summary judgment in favor of Bradshaw.

**AFFIRMED.**[4]

---

[4] Veasy's motion for leave to file a reply brief out of time is **GRANTED**. Sheriff Bradshaw's motion to strike the reply brief is **DENIED AS MOOT**, and his motion to dismiss the appeal is **DENIED**.