Nellie M. MURPHY

v.

**YELLOW FREIGHT SYSTEM, INC.**

**Civ. No. 1:92–cv–826–ODE.**

United States District Court,
N.D. Georgia,
Atlanta Division.

July 1, 1993.

Patricia J. Craft, Atlanta, GA, for plaintiff.

David Richard Kresser, Fisher & Phillips, Atlanta, GA, for defendant.

## ORDER

ORINDA D. EVANS, District Judge.

This action arising under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), is before the court on Defendant's motion for summary judgment and on Defendant's motion for an extension of time to file its reply brief. As a preliminary matter, the motion for extension of time to file the reply brief is GRANTED.

### FACTUAL BACKGROUND

Plaintiff's first claim is that she was not selected for the position of breakbulk secretary in June, 1990, because of her age. Her second claim is that she was retaliated against for filing an EEOC complaint.

Plaintiff was hired by Yellow Freight at its Atlanta terminal in August, 1984. At the time she was hired, Plaintiff was 41 years old; in June, 1990, she was 47 years old. From March 1986 to June 1989, Plaintiff worked as a secretary for an area manager in Yellow Freight's regional office, located in the same building as Yellow Freight's Atlanta terminal office.

Some or all of the regional office was transferred to Jacksonville, Florida in June 1989. Plaintiff declined to transfer, and instead began working as a relief clerk, the only available position in the Atlanta office. In June 1990, Yellow Freight posted a notice of a job opening for "Breakbulk Confidential Secretary" (hereinafter "BBS"). The BBS was the confidential secretary to the Breakbulk Manager. At that time, the Breakbulk Manager was Russell Rieves.

Four Yellow Freight employees applied for the BBS position. In addition to Plaintiff, the applicants were Wanda Abernathy (34 years old), Flo Lyon (44 years old), and Jessica Poole (30 years old). Mr. Rieves selected Wanda Abernathy for the position. Mr. Rieves was 47 years old at the time.

Plaintiff's two previous performance evaluations rated her as "commendable", and her overall rating was an "M+" in both evaluations. Wanda Abernathy had slightly less glowing evaluations. Her overall rating was "M" and her work performance was "good." She had a lower total point score than Plaintiff on both evaluations. Wanda Abernathy had experience as a secretary in several different settings, including two jobs with trucking companies.

It appears that the other two applicants for the position, Poole and Lyon, were also (on paper) qualified for the BBS position. Both Poole and Lyon had "M+" and "commendable" ratings, and Lyon had slightly better total point scores than Plaintiff. Both applicants had secretarial experience in the trucking industry prior to working for Yellow Freight.

It is undisputed that Mr. Rieves interviewed each applicant, reviewed each applicant's written performance evaluations and employment applications, and spoke with supervisors and coworkers of each applicant. He also took into account his own experience in working with the applicants at various times. Mr. Rieves testified that he felt that all of the applicants were technically qualified for the position.[1]

Mr. Rieves testified that he selected Ms. Abernathy for several reasons. As with all four applicants, she was technically qualified, and had recent secretarial experience in the trucking industry. Her personnel file contained good performance evaluations. Ms. Abernathy had previously worked as a payroll clerk, a demanding job which involved confidentiality of personnel and payroll records. Ms. Abernathy had filled in for the BBS on several prior occasions; Mr. Rieves found her to be competent and professional, and enjoyed working with her. Plaintiff had also filled in during absences of the BBS on prior occasions; Mr. Rieves found Plaintiff to be somewhat lacking in interpersonal skills, particularly with regard to her handling of telephone calls. Mr. Rieves stated that he did not enjoy working with Plaintiff.

Mr. Rieves also testified about two other reasons for choosing Mr. Abernathy rather than Plaintiff. He stated that he had received reports from her coworkers that Plaintiff loafed or wasted time when her supervisor was out of town. In addition, Mr. Rieves knew that Plaintiff had previously worked for Ralph Nowell, Rieves' supervisor in the regional office. He was concerned that Plaintiff might provide Mr. Nowell with information about the Atlanta office without following the proper channels of communication.

Plaintiff asserts that her duties as the secretary to the Area Manager were very

---

1. Plaintiff disputes that Wanda Abernathy was technically qualified. She points to the posted requirements for the position, which include: "Written and verbal communication skills / Typing: 60 WPM / Ability to handle workload for seven (7) managers." Plaintiff argues that because Abernathy did not have *experience* in work-

ing for multiple managers that she must not have had the *ability* to do so. The court finds this to be a strained and unreasonable inference. Plaintiff also argues that Abernathy could not recall in deposition how fast she could type. The court does not believe that this raises a genuine issue of material fact.

similar to the duties required of the BBS, and that she received excellent reviews while in that position. It appears that Yellow Freight has no written policies or guidelines regarding the selection of personnel for office positions; the manner in which decisions are made is left to the discretion of individual managers.

After Wanda Abernathy was selected for the BBS position in June 1990, Plaintiff told Mr. Rieves and other managers that she felt she had been discriminated against. She filed a complaint with the EEOC on December 10, 1990, alleging that she had not been selected for the BBS position because of her age. On March 20, 1992, Plaintiff filed a second EEOC complaint, alleging retaliation for "opposing violations of the ADEA and having previously filed a charge of age discrimination...."

## ANALYSIS

### A. Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the [Defendant] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In ruling on Defendant's motion, the court must view the evidence in a light most favorable to Plaintiff. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). To prevail in its motion for summary judgment, Defendant must show that the evidence is insufficient to establish an essential element of Plaintiff's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). If Defendant makes a sufficient showing, then Plaintiff "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)). If the evidence supporting Plaintiff's claims is insufficient for a jury to return a Plaintiff's verdict, or is merely colorable or not significantly probative, then Defendant is entitled to summary judgment. *Anderson v.*

*Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). If, however, reasonable minds could differ as to the import of the evidence, and a reasonable interpretation of the evidence could lead to a Plaintiff's verdict, then summary judgment is inappropriate. *Id.* at 251–52, 106 S.Ct. at 2512.

### B. The Age Discrimination Claim

 The ADEA makes it unlawful to use age as a relevant factor in employment decisions. 29 U.S.C. § 623(a). In order to recover damages under the ADEA, Plaintiff must first establish a prima facie case. *Earley v. Champion International Corp.,* 907 F.2d 1077, 1081 (11th Cir.1990). Plaintiff may establish a prima facie case in one of three ways: by presenting direct evidence of age discrimination; by presenting statistical evidence of a pattern of discrimination; or by presenting circumstantial evidence in accordance with the test derived from *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Earley,* 907 F.2d at 1081. A prima facie case has been established by Plaintiff when, without more, "an ordinary person could reasonably infer discrimination if the facts presented remain unrebutted." *Carter v. Miami,* 870 F.2d 578, 583 (11th Cir.1989).

 If Plaintiff is able to establish a prima facie case under one of these approaches, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory rationale for the discharge. *Earley,* 907 F.2d at 1081. Once the employer has done so, the burden shifts back to Plaintiff to establish that the asserted reasons are pretextual. *Id.; Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If Plaintiff is at that point unable to "present concrete evidence in the form of specific facts which show that the defendant's proffered reason is mere pretext," the employer is entitled to summary judgment. *Earley,* 907 F.2d at 1081. Although the burden of production shifts between Plaintiff and Defendant, the burden of persuasion remains on Plaintiff at all times. *Id.*

In this case, Plaintiff does not assert that there is any direct evidence of age discrimination. Nor does she present any statistical evidence of discrimination. Instead, she argues that her prima facie burden is met by circumstantial evidence of discrimination on the basis of age.

■ In the absence of direct evidence, the traditional test for evaluating circumstantial evidence in an employment discrimination case is the test found in *McDonnell Douglas, supra.* As modified for purposes of the ADEA, that test requires Plaintiff to prove that she (1) was a member of the protected group of persons between the ages of 40 and 70, (2) was subject to adverse employment action, (3) was replaced with a person outside the protected group, and (4) was qualified to do the job. *Mitchell v. Worldwide Underwriters Ins. Co.,* 967 F.2d 565, 566 (11th Cir.1992). For purposes of this summary judgment motion, Defendant admits that Plaintiff has met the requirements of a prima facie case. Therefore, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory justification for its employment decision.

■ As stated in the factual background, Mr. Rieves testified that all four applicants for the BBS position were technically qualified. He therefore went beyond technical qualifications and considered statements of supervisors and coworkers, as well as his own experiences in working with the applicants in the past. He considered the past work experience of each applicant and the interview which he held with each applicant. Based on all of this information, Mr. Rieves testified that he decided that Ms. Abernathy was the best applicant for the position. He enjoyed working with her and felt he could trust her to keep matters confidential; furthermore, he believed that her knowledge of the job and the computer system would allow her transition easily into the position.

■ Once Defendant has articulated a legitimate, nondiscriminatory rationale for its decision, the burden shifts back to Plaintiff to show that this rationale is pretextual. *Earley,* 907 F.2d at 1081. Plaintiff's argument boils down to the following: Plaintiff was more qualified than Ms. Abernathy; therefore, there is a genuine issue of whether the reasons articulated by Mr. Rieves are pretextual. The resolution of this issue depends upon the credibility of Mr. Rieves, and so a trial is appropriate.

■ The court does not believe that Plaintiff's argument is in accord with the law of this circuit. The *McDonnell Douglas/Burdine* test does not require direct evidence of discrimination; it allows a plaintiff to prevail if there is sufficient circumstantial evidence of discrimination. However, even under this framework, Plaintiff must present "significantly probative evidence" that the articulated rationale is pretextual. *Carter v. City of Miami,* 870 F.2d 578, 584 (11th Cir.1989). The fact that Plaintiff was objectively more qualified for the position cannot supply sufficient evidence of pretext. Even if the court were to accept Plaintiff's argument that she was more qualified than Wanda Abernathy, a decision in Plaintiff's favor is not compelled. "To rebut plaintiff's prima facie case, the defendant need not demonstrate that the individual ... selected was actually more qualified than the plaintiff, rather it must only show that it had a legitimate nondiscriminatory reason for its action." *Brown v. American Honda Motor Co., Inc.,* 939 F.2d 946, 953 (11th Cir.1991).

■ It is clear that there are some factual disputes regarding the details of Plaintiff's and Ms. Abernathy's objective qualifications. However, these factual disputes do not create a "genuine issue as to any material fact" so as to necessitate a trial. Fed.R.Civ.P. 56(c). Viewing the facts in the light most favorable to Plaintiff, the evidence establishes only that Plaintiff was objectively more qualified in terms of performance evaluations and seniority. Defendant has presented evidence that Mr. Rieves considered subjective factors which overrode the objective factors, and Plaintiff has presented no evidence that Mr. Rieves statement of subjective reasons for his decision is a pretext for discrimination based upon age. The use of subjective factors in making employment decisions cannot be sufficient to support a finding of discrimination. *See Hill v. Seaboard Coast Line R.R. Co.,* 767 F.2d 771, 775 (11th Cir.1985);

*Dodd v. Singer Co.,* 669 F.Supp. 1079, 1085 (N.D.Ga.1987) (Shoob, J.) ("Absent reliance on unlawful criteria, the discretion to choose among candidates rests with the employer."); *Casillas v. United States Navy,* 735 F.2d 338 (9th Cir.1984); *Aguirre–Molina v. New York State Div. of Alcoholism,* 675 F.Supp. 53, 60 (N.D.N.Y.1987).

Plaintiff repeatedly insists that she was more qualified than Ms. Abernathy, and that this alone is sufficient to create an issue of fact for the jury. However, Plaintiff has failed to present "significantly probative evidence" that Mr. Rieves did not actually rely on his stated criteria, or that he was motivated in any way by discrimination. *Carter,* 870 F.2d at 584. "The ADEA was not intended to be a vehicle for judicial second-guessing of employment decisions nor was it intended to transform the court into personnel managers." *Bienkowski v. American Airlines, Inc.,* 851 F.2d 1503, 1507–08 (11th Cir.1988). Regardless of whether Mr. Rieves made the "right" decision (in terms of fairness or wise business practices), this court cannot send an ADEA case to a jury where there is a complete absence of evidence of discrimination on the basis of age. As a result, Defendant's motion for summary judgment on the ADEA claim is GRANTED.

## C. *The Retaliation Claim*

 A claim of retaliation for filing charges with the EEOC is also governed by the *McDonnell Douglas* framework. In order to establish a prima facie case of retaliation, Plaintiff must show (1) statutorily protected expression, (2) adverse employment action, and (3) a causal link between the protected expression and the adverse action. *Weaver v. Casa Gallardo, Inc.,* 922 F.2d 1515, 1524 (11th Cir.1991). The burden of production then shifts to Defendant to articulate legitimate, non-discriminatory reasons for the adverse employment action. If Defendant carries this burden of production, the burden shifts back to Plaintiff to show that the asserted reasons were pretextual. *Donnellon v. Fruehauf Corp.,* 794 F.2d 598, 601 (11th Cir.1986).

The Eleventh Circuit has further defined what is meant by a "causal link" between the protected expression and the adverse conduct:

> [T]he causal link in the [retaliatory discharge] formula [is not] the sort of logical connection that would justify a prescription that the protected participation in fact prompted the adverse action. Such a connection would rise to the level of direct evidence of discrimination, shifting the burden of persuasion to the defendant. Rather, we construe the 'causal link' element to require merely that the plaintiff establish that the protected activity and the adverse action were not wholly unrelated.

*Simmons v. Camden County Board of Education,* 757 F.2d 1187, 1189 (11th Cir.), *cert. denied* 474 U.S. 981, 106 S.Ct. 385, 88 L.Ed.2d 338 (1985).

 It is undisputed that Plaintiff complained to Mr. Rieves and other managers about her perceptions of discrimination following the selection of Wanda Abernathy for the BBS position. It is also undisputed that Plaintiff filed a complaint with the EEOC in December 1990. Therefore, Plaintiff has clearly engaged in statutorily protected expression and has satisfied the first requirement of the prima facie case.

Plaintiff appears to claim four types of adverse employment action. First, she asserts that she did not receive as high pay raises as she would have had she not filed the EEOC complaint. Second, she asserts that she was given less desirable work shifts in retaliation for her complaints. Third, she states that Larry Walls, the Office Manager at the Atlanta terminal, placed "negative memoranda" in her personnel file because of her complaints. Finally, Plaintiff states that she was reprimanded for violating a dress code, while violations by other employees went unnoticed.

The evidence relating to pay raises shows that Plaintiff received a raise of $.50 per hour in March 1991, and that she received another raise of $.50 per hour in March 1992. In March 1991, annual pay raises were awarded to 34 employees. Of those, 6 received a $.70 raise, one received a $.65 raise, 11 received a $.60 raise, and 16 (including Plaintiff) re-

ceived a $.50 raise. In March 1992, one employee received a $.55 raise, 8 (including Plaintiff) received a $.50 raise, 15 received a $.45 raise, 2 received a $.40 raise, and 4 received a $.35 raise.

During Plaintiff's deposition, she stated that she did not know the amounts of her own pay raises or her then current hourly rate of pay. Her claim apparently was based solely on her perception that she had received a "minimum raise." She testified that "[t]he other employees discussing theirs— they did not say how much they got, but they said that they got good raises, and they were real pleased with it." (Murphy Depo. at 125–26).

Defendant argues that there is no evidence of adverse employment action, in that Plaintiff's 1991 pay raise was the same as 15 other employees, and the 1992 raise was lower than only one other employee. Furthermore, Plaintiff's 1991 raise was identical to the raise given to all other relief clerks. In Plaintiff's response brief, her sole argument on this issue is that Plaintiff had been a relief clerk longer than the other relief clerks, and that she was therefore not similarly situated to them.

■ The court must conclude that Plaintiff has not presented sufficient evidence to establish a prima facie case of retaliation with respect to pay raises. She has not presented evidence of "adverse employment action," much less evidence of a causal link to protected expression. The 1991 raise was identical to the other relief clerks, and the 1992 raise was higher than most other employees. The simple fact that Plaintiff did not receive as high a raise as she feels she is worth, although it was the same or higher than other employees, does not constitute an "adverse employment action." The court

finds that Plaintiff has not made out a prima facie case on this issue.

■ The next claim of adverse employment action relates to Plaintiff's work schedules. Plaintiff alleges that she was assigned to more night and weekend shifts as a result of her protected complaints. It appears that, prior to August 1990, Plaintiff and the other relief clerks worked only day shifts during the week. There is some dispute regarding when Plaintiff's work schedule changed; viewing the facts most favorably to Plaintiff, it appears that beginning in August 1990, her duties were changed to include filling in for dock clerks and other jobs which involved occasional evening, weekend and night shifts.[2] In February 1991, the duties of all relief clerks were changed to include these irregular shifts. The night and weekend shifts were less desirable than the weekday shifts.[3] Larry Walls, the Office Manager, had full discretionary authority over the assignment schedules for the relief clerks, and he chose to assign the shifts primarily on the basis of seniority. Thus, Victor Foxworth, a relief clerk with more seniority than Plaintiff, worked fewer night and weekend shifts than Plaintiff; on the other hand, Karen Fulbright, with less seniority than Plaintiff, worked more night and weekend shifts than did Plaintiff.

■ Plaintiff has not adequately alleged an "adverse employment action" necessary to make out a prima facie case of retaliation. Although intentionally singling an employee out for less desirable shifts might constitute an "adverse employment action" in some circumstances, here Plaintiff was simply required to work the same shifts as other relief clerks, and there is evidence that at least one other relief clerk worked more night and weekend shifts than did Plaintiff. Furthermore, even if Plaintiff has presented enough

---

2. There is some evidence that Plaintiff's schedule changed as early as August 1990. (Murphy Depo. at 126; Defendant's Exhibit 3). However, Plaintiff's own EEOC complaint relating to the retaliation claims states that prior to filing her first EEOC complaint "no Relief Clerks were required to work night shift hours, and my hours were 8am—5pm." (Defendant's Exhibit 6 at p. 2). This undermines Plaintiff's assertion in her brief that she was singled out for special retalia-

tory treatment prior to the time when all relief clerks were required to work irregular shifts. Even if Plaintiff's schedule did change in August 1990, she admitted in her deposition testimony that she did not work many night hours prior to early 1991. (Murphy Depo. at 126–27).

3. This was the primary reason that Plaintiff sought the BBS position.

evidence to constitute a prima facie case,[4] the court believes that Defendant has presented legitimate, nondiscriminatory reasons for its actions, and that Plaintiff has failed to produce any evidence of pretext. Defendant has produced testimony that Mr. Walls assigned the night and weekend shifts on the basis of seniority. Plaintiff argues that reliance on seniority is pretextual because other schedule assignments within Yellow Freight are not made on the basis of seniority. However, the court does not find this "evidence" to be probative because the relief clerk jobs are the only positions with irregular schedules, and thus are not comparable to other positions within the company. Furthermore, the court finds it implausible to infer that Mr. Walls set up a system of seniority-based assignments solely in retaliation for Plaintiff's protected expression, when the result of that system is to require Ms. Fulbright to work more night and weekend shifts than Plaintiff. The court finds that Plaintiff has not established a prima facie case of adverse employment action relating to her shift schedules; alternatively, Plaintiff has failed to produce evidence that Defendant's asserted nonretaliatory reasons are pretextual.

■ The third assertion of adverse employment action relates to Plaintiff's violation of a "dress code." This complaint arises out a single incident when Plaintiff wore a warm-up suit to work. The only "action" taken against Plaintiff was that she was "just told not to wear it again." (Murphy Depo. 117). Plaintiff argues that other employees have worn similar clothing and have never been reprimanded. The court finds that Plaintiff has failed to allege any "adverse employment action" which would constitute a prima facie case of retaliation.

■ The final claim of retaliation made by Plaintiff relates to documents placed in her personnel file by Larry Walls. Plaintiff includes the following in her statement of material facts:

After learning that Ms. Murphy had filed a charge of discrimination with the EEOC in December 1990, Larry Walls began placing negative memoranda in her personnel file. He admitted that he did so because of Ms. Murphy's litigation against Yellow Freight. Although he had praise for Ms. Murphy's job performance, he did not place any favorable comments in her file.

Plaintiff's Statement of Additional Facts, No. 79. However, a review of the deposition testimony of Mr. Walls and the memoranda placed in Plaintiff's personnel file indicates that Plaintiff's "interpretation" of the facts is misleading. (*See* Walls Depo. at 49–74; Plaintiff's Exhibit 28). Mr. Walls testified that after learning of the litigation between Plaintiff and Yellow Freight, he began keeping careful notes of his conversations with Plaintiff so that he would be able to refresh his recollection should that become necessary. Thus the "negative memoranda" referred to by Plaintiff consist of notes of Walls' conversations with Plaintiff regarding scheduling, absences and vacations; they are not independent negative evaluations of Plaintiff's performance. In addition, Mr. Walls stated that he did praise Plaintiff's performance on occasion, but did not commemorate such praise in writing because he only did so if an employee did something "phenomenal." (Walls Depo. at 72). The court finds that Plaintiff's summary of the evidence is strained and misleading. There is no "adverse employment action" that arises out of careful notes of conversations taken by Mr. Walls. Plaintiff's claim in this regard is frivolous and does not constitute a prima facie case of retaliation.

As a result of the above analysis, the court concludes that Plaintiff has not established a prima facie case of retaliation on any of her claims of adverse employment action. Therefore, the court must GRANT Defen-

---

4. The court also notes that the "causal link" is rather tenuous; it appears that Plaintiff's schedule was determined by Larry Walls, who did not even arrive at Yellow Freight until September 1990, three months after Wanda Abernathy had been selected for the BBS position. There is no evidence that Mr. Walls knew about her percep-

tions of age discrimination until after the EEOC complaint was filed in December 1990. Yet Plaintiff claims that Mr. Walls assigned her to night and weekend shifts throughout the fall of 1990, and that this scheduling was somehow retaliatory.

**1552**

dant's motion for summary judgment on the retaliation claims.

**CONCLUSION**

Accordingly, Defendant's motion for summary judgment [# 17–1] is GRANTED. Defendant's motion for extension of time to file its reply brief [# 22–1] is also GRANTED. The Clerk is DIRECTED to enter judgment in favor of Defendant on all claims.

SO ORDERED.