United States Court of Appeals,

Eleventh Circuit.

No. 94-4769.

Paul ISENBERGH, Plaintiff-Appellant,

v.

KNIGHT-RIDDER NEWSPAPER SALES, INCORPORATED, a/k/a Newspapers
First, Inc., Knight-Ridder, Inc., Defendants-Appellees.

June 11, 1996.

Appeal from the United States District Court for the Southern
District of Florida. (No. 91-1596-CIV-UUB), Jacob Mishler, Judge.

Before EDMONDSON and DUBINA, Circuit Judges, and ENGEL[*], Senior
Circuit Judge.

ENGEL, Senior Circuit Judge:

Plaintiff Paul Isenbergh appeals the district court's grant of
judgment as a matter of law for defendant Knight-Ridder Newspaper
Sales, Inc. ("KRNS"), a/k/a Newspapers First, Inc. ("Newspapers
First"), in Isenbergh's suit under the Age Discrimination in
Employment Act ("ADEA"), 29 U.S.C. §§ 621-634.  Isenbergh claims
that Newspapers First discriminated against him because of his age
in selecting the manager for the company's Miami sales office.
After trial, a jury returned a verdict in favor of Isenbergh and
awarded him $250,000 in damages.  Newspapers First, which earlier
had submitted a motion for judgment as a matter of law that the
district court denied, renewed its motion under Rule 50(b) of the
Federal Rules of Civil Procedure.  The district court granted the
motion.  Because we agree that Isenbergh did not produce evidence
from which the jury could reasonably infer intentional

---

[*]Honorable Albert J. Engel, Senior U.S. Circuit Judge for
the Sixth Circuit, sitting by designation.

discrimination based on age, we affirm.

I.

In 1990, KRNS merged with Million Market Newspapers/Times Mirror National Marketing, Inc. ("MMTM") to form Newspapers First. At the time of the merger, Isenbergh, sixty years old, was the manager of KRNS's Miami sales office. Larry Malloy, forty-four years old, was the manager of MMTM's Miami sales office. Both were candidates, along with eight other KRNS and MMTM managers from around the country, for the new position of manager of Newspapers First's Miami sales office. To select the new manager, King Anthony, the former president of MMTM and current president of Newspapers First, and John Kosanke, the former president of KRNS and current executive vice-president of Newspapers First, interviewed the ten candidates. The only real competition for the new position, however, was apparently between Isenbergh and Malloy, because Newspapers First did not want to move a manager from another part of the country to Miami. In conjunction with the interviews, Anthony and Kosanke used an "alternation ranking system" to rate the candidates. KRNS had never used this system before to make personnel decisions. Under the system, each candidate received two ordinal rankings: one based on past management performance and one based on the interview. The two rankings were averaged to obtain each candidate's overall score.

When the nine candidates who had worked at KRNS or MMTM for more than six months were ranked according to this system, Isenbergh finished eighth. Malloy finished second. Three managers over age fifty—including one who was sixty-three years old—finished

higher than Isenbergh.  Malloy got the job, and Isenbergh was offered the chance to interview for a sales position in Miami.  He chose to take early retirement instead.

Isenbergh testified that the atmosphere at his interview was "cold" and that Anthony was on the phone most of the time.  His interview allegedly lasted only a half-hour, whereas Malloy's was a full hour, as all of the interviews were planned to be. Newspapers First presented evidence challenging Isenbergh's version of what happened at the interview.

Isenbergh worked for KRNS from the late 1960s until 1990, mostly as a salesman.  He became a vice-president in 1984.  In 1986, he won the praise of Kosanke by selling an advertising package to Walt Disney World.  Isenbergh's competitors for the account included a newspaper whose sales were handled by Malloy. The parties dispute the significance of this transaction. Isenbergh characterizes it as evidence of his good job performance in the past and of his superior qualification, relative to Malloy, for the managerial job.  Newspapers First deems it to be irrelevant, because it involved sales, not management, and because Isenbergh's newspaper was able to offer Walt Disney World a lower advertising rate than was Malloy's newspaper.

There is conflicting evidence about how Isenbergh was viewed within the company and about his qualifications as a manager. Isenbergh points to his annual pay raises and management-by-objective bonuses that were approved by Kosanke, as well as to the lack of a paper trail of criticism, as evidence of his perceived competence.  He further points to testimony by

Kosanke that Isenbergh was a "seasoned manager" and a "satisfactory manager." Kosanke also testified, however, that Isenbergh was a "lone ranger" and was not a "team player." Isenbergh argues that his experience running newspaper offices of up to five people and commanding a department of about sixty men while he was in the Navy qualified him as a manager. Newspapers First counters that Isenbergh's job at KRNS entailed little management and that for the management Isenbergh did do, he was criticized by Kosanke. It stresses Malloy's extensive management experience and argues that he was better suited for the new job than Isenbergh.

## II.

### A.

We review de novo the district court's grant of judgment as a matter of law. *Daniel v. City of Tampa,* 38 F.3d 546, 549 (11th Cir.1994), *cert. denied,* --- U.S. ----, 115 S.Ct. 2557, 132 L.Ed.2d 811 (1995). In other words, we apply the same standard as that applied by the district court. *Carter v. City of Miami,* 870 F.2d 578, 581 (11th Cir.1989). In considering a motion for judgment as a matter of law, a court must view all the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of the nonmoving party. *Id.* The motion should be granted only if upon such consideration, the court finds that reasonable people in the exercise of impartial judgment could not arrive at a contrary verdict. *Id.* The court may not weigh the evidence or decide the credibility of witnesses. *Watts v. Great Atl. & Pac. Tea Co.,* 842 F.2d 307, 310 (11th Cir.1988) (quoting *Boeing Co. v. Shipman,* 411 F.2d 365, 375 (5th Cir.1969) (en banc)).

The nonmoving party must provide more than a mere scintilla of evidence to survive a motion for judgment as a matter of law; "there must be a substantial conflict in evidence to support a jury question." *Carter,* 870 F.2d at 581.

Newspapers First argues that judgment as a matter of law is appropriate in age discrimination cases more often than in other cases because in age discrimination cases juries tend to return verdicts based on sympathy rather than law. Certainly it is true that in some age discrimination cases, "sympathy for the plaintiff may present an overriding but impermissible factor in a jury verdict for plaintiff." *Chappell v. GTE Prods. Corp.,* 803 F.2d 261, 265 (6th Cir.1986), *cert. denied,* 480 U.S. 919, 107 S.Ct. 1375, 94 L.Ed.2d 690 (1987). If there can be no reasonable dispute as to the facts of the case and the inferences to be drawn from them, judgment as a matter of law is of course applicable to prevent a jury verdict based purely on sympathy. The legal standard for when to grant judgment as a matter of law in age discrimination cases, however, is no different from that in other cases: whether reasonable people could arrive at a contrary verdict. In fact, this court has cautioned against taking employment discrimination cases away from the jury. *See Batey v. Stone,* 24 F.3d 1330, 1336 (11th Cir.1994) (noting that summary judgment is often inappropriate in employment discrimination cases because the factual inquiry involves an examination of motive and intent); *Hairston v. Gainesville Sun Publishing Co.,* 9 F.3d 913, 921 (11th Cir.1993) (noting that summary judgment is "generally unsuitable in Title VII cases in which the plaintiff has

established a prima facie case").

The fact that the district court judge allowed the question of Newspapers First's liability to go to the jury before granting judgment as a matter of law does not affect our review of the judgment. Before the 1991 amendment to Rule 50, a Rule 50 motion before the verdict was a "motion for directed verdict," and a Rule 50 motion after the verdict was a "motion for judgment notwithstanding the verdict." Now, both are termed "motion for judgment as a matter of law." The Advisory Committee on Rules has explained that one reason for the change in terminology was to express "the common identity of the two motions made at different times in the proceeding." Fed.R.Civ.P. 50(a) advisory committee's note on 1991 amendment. Furthermore, our cases have acknowledged that the standard of review for a judgment notwithstanding the verdict is the same as that for a directed verdict. *E.g., Lamb v. Sears, Roebuck & Co.,* 1 F.3d 1184, 1187 (11th Cir.1993). The district court's grant of Newspapers First's motion for judgment as a matter of law after the jury verdict under Rule 50(b) was not inconsistent with its denial of Newspapers First's motion for judgment as a matter of law before the verdict under Rule 50(a). As the Advisory Committee has explained,

> Often it appears to the court ... that a motion for judgment as a matter of law made at the close of the evidence should be reserved for a post-verdict decision. This is so because a jury verdict for the moving party moots the issue and because a preverdict ruling gambles that a reversal may result in a new trial that might have been avoided. For these reasons, the court may often wisely decline to rule on a motion for judgment as a matter of law made at the close of the evidence....

Fed.R.Civ.P. 50(b) advisory committee's note on 1991 amendment.

The district court in this case took such a prudent course, which in no way affects our analysis of whether its grant of the motion after the verdict was correct.

B.

We look first to see whether Isenbergh has presented a prima facie case of discrimination. A plaintiff alleging age discrimination under the ADEA may choose one of three ways to establish a prima facie case: (1) direct evidence of discriminatory intent; (2) statistical proof of disparate treatment; or (3) meeting a test such as that set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Carter v. City of Miami,* 870 F.2d 578, 581 (11th Cir.1989).

In *McDonnell Douglas,* the Supreme Court articulated the four elements a plaintiff must show in order to establish a prima facie case of employment discrimination:

> (i) that he belongs to a [protected class]; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. The Supreme Court intended this framework to be flexible, *see id.* at 802 n. 13, 93 S.Ct. at 1824 n. 13, rather than "mechanized, or ritualistic," *United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983) (quoting *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978)). This court has enunciated various reformulations of the *McDonnell Douglas* test. For example, in

*Carter,* we applied a variation of the *McDonnell Douglas* test requiring that a plaintiff show the following elements to establish a prima facie case under the ADEA:

> (1) that he is a member of the protected group;  (2) that adverse employment action was taken against him, e.g. discharge, demotion, or failure to hire;  (3) that he was replaced by a person outside the protected group;  and (4) that he was qualified for the position for which he was rejected.

*Carter,* 870 F.2d at 582 (footnote omitted).[1]  In  *Carter,* the plaintiff had been fired and replaced by a younger employee.  In *Earley v. Champion International Corp.,* 907 F.2d 1077 (11th Cir.1990), we set forth a slightly different variation of the *McDonnell Douglas* test in a case involving a "reduction in force." The plaintiff had to show

> (1) that he was in a protected age group and was adversely affected by an employment decision;  (2) that he was qualified for his current position or to assume another position at the time of discharge or demotion;  and (3) evidence by which a fact finder might reasonably conclude that the employer intended to discriminate on the basis of age in reaching the decision at issue.

*Earley,* 907 F.2d at 1082.

We have followed the Supreme Court's command that the application of any test for establishing a prima facie case be flexible.  *E.g., Carter,* 870 F.2d at 582 n. 11;  *see also Pace v. Southern Ry. Sys.,* 701 F.2d 1383, 1387 (11th Cir.) ("The particularly amorphous nature of age discrimination counsels

---

[1]An ADEA plaintiff need not show that the person selected for the job was younger than 40, even though ADEA protection begins at that age.  *See, e.g., Pace v. Southern Ry. Sys.,* 701 F.2d 1383, 1387 (11th Cir.) ("Because of the value of experience rarely are sixty-year-olds replaced by those under forty." (quoting *McCorstin v. United States Steel Corp.,* 621 F.2d 749, 754 (5th Cir.1980))), *cert. denied,* 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983).

against rigid application of a *McDonnell Douglas*[-type] test."), *cert. denied,* 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983). Noting the difficulty of tailoring the *McDonnell Douglas* test to a specific case, we have held that the essence of any prima facie case test is simply "whether the plaintiff has presented sufficient evidence to provide a basis for an inference that age was a factor in the employment decision." *Pace,* 701 F.2d at 1387. Any particular test that a court chooses to use in evaluating this question is merely a "tool" to facilitate this evaluation. *Id.*

The district court treated this case as a "failure to hire" case, as opposed to a "reduction in force" case. Although, as discussed above, case law suggests that the standard for establishing a prima facie case depends on whether the case concerns a reduction in force as opposed to a termination or a failure to hire, *compare Earley,* 907 F.2d at 1082 (listing prima facie case criteria for reduction-in-force cases), *with Carter,* 870 F.2d at 582 (listing prima facie case criteria for termination and failure-to-hire cases), the instant appeal demonstrates why, as we noted in *Pace,* employment discrimination cases are not easily categorized and why any prima facie case test must be flexible. In a sense, the position of manager of Newspapers First's Miami office was a new job as a result of the merger of KRNS and MMTM, and Isenbergh's and Malloy's previous positions disappeared. From this viewpoint, the case is one of a failure to hire. Because the candidates considered for this "new" position, however, were all from within the two merging companies, the situation was not the same as in a standard failure-to-hire case. In essence, because of

the merger, there was a reduction in force from two Miami managers to one. In deciding whether Isenbergh has established a prima facie case, we need not crudely categorize the facts as involving either a failure to hire or a reduction in force. Rather, we examine the facts of the case and decide "whether the plaintiff has presented sufficient evidence to provide a basis for an inference that age was a factor in the employment decision." *Pace,* 701 F.2d at 1387.

If Isenbergh has succeeded in presenting a prima facie case, we then examine whether Newspapers First has satisfied its burden of producing evidence that the hiring of Malloy over Isenbergh was based on some "legitimate, nondiscriminatory reason." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). This burden on the employer is one of production, not persuasion. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 510-11, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993). If the burden is met, the *McDonnell Douglas* framework "drops out" of the case, leaving the jury to decide the ultimate question of whether the employer intentionally discriminated on the basis of age. *Hicks,* 509 U.S. at 510-11, 113 S.Ct. at 2749.

*Hicks* holds that the plaintiff must show not only that the employer's proffered reason for the adverse employment decision was false, but also that discrimination was the real reason. *Id.* at 515-17, 113 S.Ct. at 2752. In *Hicks,* a case involving alleged employment discrimination based on race, the Supreme Court held that the plaintiff was not entitled to judgment as a matter of law when the trier of fact disbelieved the employer's proffered

nondiscriminatory reason. The district court, which was the trier of fact, did not believe the defendant's reason for firing the plaintiff but also did not think that the plaintiff had proved that race was the real reason for his discharge. The court therefore entered judgment for the defendant. The Eighth Circuit reversed, arguing that the discrediting of the defendant's proffered reason entitled the plaintiff to judgment as a matter of law. The Supreme Court in turn reversed the court of appeals and remanded the case for further proceedings consistent with its opinion, presumably reinstating the judgment entered in favor of the defendant by the district court as the trier of fact. We recognize that the effect of our decision is not to reinstate the verdict for the plaintiff entered by the jury as the trier of fact but rather to express our agreement with the trial court that as a matter of law discrimination was not shown. Nonetheless, we believe that *Hicks* is instructive here and persuades us that the district judge did not err in granting the Rule 50(b) motion.

Evidence allowing the trier of fact to discredit an employer's proffered reason for an adverse employment decision thus alone is not enough for a plaintiff to survive a motion for judgment as a matter of law. Isenbergh disputes this proposition, relying on the following language from *Hicks:*

> The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons, will *permit* the trier of fact to infer the ultimate fact of intentional discrimination, ... [and] upon such rejection, "[n]o additional proof of discrimination is required,"....

*Id.* at 510-11, 113 S.Ct. at 2749 (quoting *Hicks v. St. Mary's Honor*

*Center,* 970 F.2d 487, 493 (8th Cir.1992) (appellate court decision in same case)). The first sentence of this passage shows that disbelief of the employer's proffered reason *may* be enough for a plaintiff to survive a motion for judgment as a matter of law. The second sentence is potentially confusing in saying that rejection of the proffered reason "will *permit* " the inference of discrimination. In the context of both sentences together, however, it is clear that rejecting the proffered reason is not *always* sufficient to show discrimination. The *Hicks* Court clarified this distinction in a footnote:

> Contrary to the dissent's confusion-producing analysis, there is nothing whatever inconsistent between [the statement quoted above] and our later statements that (1) the plaintiff must show "both that the reason was false, and that discrimination was the real reason," and (2) "it is not enough ... to *dis* believe the employer." Even though (as we say here) rejection of the defendant's proffered reasons is enough at law to sustain a finding of discrimination, there must be a finding of discrimination.

*Id.* at 511 n. 4, 113 S.Ct. at 2749 n. 4.

Therefore, under *Hicks,* a plaintiff must show both that the defendant's reason was false and that the real reason was discrimination. *Id.* at 511 n. 4, 515-17, 113 S.Ct. at 2749 n. 4, 2752. A finding that the defendant's reason was false is alone not enough; there must also be a finding of discrimination. The finding of discrimination may be inferred, though, from the disbelief. Evidence from which the jury may reasonably disbelieve the employer's proffered reason is not necessarily enough to support a verdict for the plaintiff; the jury also must be able to infer from this disbelief or from other evidence that the employer's actual reason was discrimination. *Id.* at 510-11 & n. 4,

113 S.Ct. at 2749 & n. 4. Therefore, if the evidence in this case reasonably allows both the inference that Newspapers First's alleged reason for the employment decision was false *and* the inference that the real reason was age discrimination, then we must let the jury verdict stand.

## C.

We find that Isenbergh has presented a prima facie case. The circumstances surrounding the merger of the two companies and the way in which Malloy was selected for the new position suggest that the newly formed company might have wanted to avoid hiring employees of Isenbergh's age. Isenbergh was in the protected age group, and he was adversely affected by Newspapers First's decision to select Malloy, who is sixteen years younger than Isenbergh, as the new manager.[2] Moreover, because the decisionmakers for Newspapers First were familiar with Isenbergh's performance in his work for KRNS, we can infer from the fact that he was granted an interview that Isenbergh was at least at some level qualified for the new job. Without deciding the ultimate question of whether a jury could reasonably infer intentional discrimination, we believe that Isenbergh has satisfied this part of the *McDonnell Douglas-Burdine* burden-shifting analysis.

We next inquire whether Newspapers First has met its burden of producing evidence of a legitimate, nondiscriminatory reason for offering the job to Malloy rather than to Isenbergh. We find that

---

[2]That Malloy was also a member of the class of persons protected by the ADEA does not render insufficient Isenbergh's prima facie showing. *See O'Connor v. Consol. Coin Caterers Corp.,* --- U.S. ----, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996).

it has done so. It has produced evidence showing that the principal criterion used in determining who would get the job was management ability, as assessed at the interviews and by evaluating past performance.

Finally, we examine whether Isenbergh has produced evidence that Newspapers First's proffered reason was false and that the real reason was age discrimination. Looking at all the evidence in the light most favorable to Isenbergh, and drawing all reasonable inferences in his favor, we find that even if a reasonable jury could have disbelieved Newspapers First's proffered reason for hiring Malloy, there was no evidence from which a reasonable inference could be drawn that age discrimination was the actual reason. We stress that this holding is not inconsistent with our conclusion that Isenbergh has presented a prima facie case of discrimination. *See Carter v. City of Miami,* 870 F.2d 578, 585 (11th Cir.1989) ("[T]he mere establishment of a prima facie case of discrimination ... does not alone establish a genuine issue of material fact sufficient to go to the jury.").

As discussed above, under *Hicks,* evidence based on which the employer's proffered reason may be disbelieved *may* be enough to permit the trier of fact to infer discrimination. In this case, however, it is not. Once the employer asserts a reason for the adverse employment decision, the case is in equipoise, and the *McDonnell Douglas-Burdine* framework becomes irrelevant. *Walker v. NationsBank of Florida, N.A.,* 53 F.3d 1548, 1557 (11th Cir.1995). The plaintiff has the burden of proving discrimination, so if the case remains in equipoise, the plaintiff must lose as a matter of

law.  Disbelief of the employer's reason is enough to push the case beyond equipoise and support a judgment for the plaintiff only if the disbelief is coupled with a reasonable belief that discrimination was the true reason.  In *Hicks*, the trier of fact (the district court) disbelieved the defendant's reason but did not believe that the plaintiff had proved discrimination, and therefore the plaintiff lost.  In the case at bar, similarly, we find that there is no evidence from which a reasonable jury could have inferred the "ultimate fact of intentional discrimination."  *See Hicks*, 509 U.S. at 511, 113 S.Ct. at 2749.

The alternation ranking system, by which Newspapers First evaluated managers from all around the country, may or may not have been a fair way to evaluate the candidates for the new job. Looking at it in the light most favorable to Isenbergh, Newspapers First may not have been completely truthful in claiming that this somewhat objective criterion was used to evaluate the candidates. Malloy did not rank first in the selection process, and the competition for the new job may effectively have been only between Malloy and Isenbergh, the two candidates from Miami, which makes the process appear somewhat suspect.  Isenbergh's testimony that his interview was shorter than planned and that Anthony talked on the phone during most of the time, if believed, casts further doubt on the selection process.  It would not have been mere speculation for the jury to disbelieve Newspapers First's explanation of the selection process.  There is no evidence, however, that the real selection process used age as a criterion.  A sixty-three-year-old candidate was rated more highly than Isenbergh overall, and more

highly than both Malloy and Isenbergh in terms of managerial skills. Most likely, Kosanke and Anthony chose Malloy because they liked the way he had performed in the past. The alternation ranking system may have been a smoke screen hiding the fact that Newspapers First held Malloy in higher regard than Isenbergh, but there is no evidence from which a jury could reasonably believe that it was a smoke screen hiding the fact that Malloy was hired because of his relative youth.

In sum, there was not sufficient evidence of intentional discrimination to allow Isenbergh's claim to be decided by the jury. Therefore, the district court was correct in granting Newspapers First's motion for judgment as a matter of law.

## III.

Newspapers First argues that Isenbergh's failure to remain employed and thereby mitigate his damages cuts off any claim that he may have. In view of our ruling, we need not and do not address this issue.

For the foregoing reasons, the judgment of the district court is AFFIRMED.