[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-12241

_____

SHARON GALLIMORE,

Plaintiff-Appellant,

*versus*

CITY OF OPA-LOCKA, FLORIDA,
a municipal corporation authorized to do
business under the laws of the State of Florida,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cv-22526-KMM

_____

Before ROSENBAUM, NEWSOM, and MARCUS, Circuit Judges.

PER CURIAM:

Sharon Gallimore appeals a district court order granting summary judgment in favor of the City of Opa Locka ("the City") in her employment discrimination action brought pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act of 1967 (the "ADEA"), 29 U.S.C. § 623(a). Gallimore, who was forty-nine years old at the relevant time, had been working as the Assistant Chief of Police for the City when she was demoted to the position of road officer and her position was taken by a woman younger than forty years old. Gallimore filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging that her demotion was on account of illegal discrimination. Two months after she filed her complaint, her employment with the City ended. According to the City, she voluntarily abandoned her job, but according to Gallimore, she was fired. Gallimore filed suit in the Southern District of Florida alleging that her termination was unlawful retaliation under Title VII, and that her demotion and then termination also constituted unlawful age discrimination in violation of the ADEA and unlawful gender discrimination in violation of Title VII. The district court granted summary judgment for the City on all of Gallimore's claims.

After careful review, we hold that the district court properly granted summary judgment for the City on Gallimore's Title VII retaliation claim and on her gender discrimination claim too. But

because she offered evidence sufficient for a jury to conclude that her demotion and termination were animated by unlawful age discrimination, the district court erred in granting summary judgment for the City on Gallimore's ADEA claim.

## I.

These are the basic facts adduced in the summary judgment record and the procedural history surrounding this case. Sharon Gallimore is a fifty-one-year-old woman who previously worked for the Police Department of the City of Opa Locka. Gallimore joined the City in 1996 as a police officer. Her career there spanned over twenty-five years, during which time she rose through the ranks to attain the position of Assistant Chief of Police, the second highest position in the department, which she held for over twenty years.

In 2020, the Mayor of Opa-Locka was Matthew Pigatt. According to Gallimore, while she was the Assistant Chief of Police, Pigatt and other City Commissioners talked about wanting to hire younger people, and when she attended the "State of the City" address by Pigatt, he told the public that "the City needed to bring in much younger and 'more energetic'" people. Pigatt also told both her and the then Chief of Police, James Dobson, that he "wanted younger people in positions of leadership in the police department," and the City Commissioner Alvin Burke told her "that people were tired of the same 'old people' and that if the police department had young officers, they would not have the health issues that older officers like [Gallimore] had." According to Gallimore, her

ultimate supervisor, City Manager John Pate, also told her that "he was feeling pressure[] about firing [Gallimore]" from "[t]he same Mayor and Commission that demanded younger people." Pate was the final decisionmaker with the authority to terminate Gallimore.

In early 2020, the City asked the Miami-Dade Police Department ("MDPD") to conduct an organizational review and assessment of the police department. As part of the assessment, the MDPD interviewed employees and reviewed police department policies, budgets, and practices. In May 2020, the MDPD released its findings, which identified multiple problems within the police department. In particular, the assessment noted that morale was low and that the "majority of the feedback suggested that the [police department was] beset by a lack of effective communications between supervisors and employees, a lack of adherence to rules, policies and job descriptions, an overabundance of supervisors as compared to rank-and-file employees, inconsistent or non-existent accountability, unacceptable levels of sick leave use, and a scarcity of strategy and planning in guiding the department's day-to-day operations."

Gallimore says that after the MDPD assessment came out, in "May and June, 2020," Pate told her and Dobson that "there would be no demotions or adverse actions as a result of the report." She claims that Pate and Dobson also both told her "that [her] performance was outstanding and that the report would not impact [her] job in any way, shape or form."

In August 2020, Pate fired Dobson, who was forty-nine years old at the time of his termination. Then, on October 6, 2020, Gallimore was demoted from Assistant Chief of Police to road patrol officer and her salary was reduced. She was also forty-nine years old when she was demoted. After demoting Gallimore, Pate appointed Nikeya Jenkins to fill the Assistant Chief of Police vacancy. Jenkins is female and was in her mid-thirties at the time of her appointment.

Sometime in March 2021, Gallimore filed a Charge of Discrimination regarding her demotion with the EEOC. On May 17, 2021, she was no longer employed by the City.

The City claims it did not fire Gallimore but instead she voluntarily abandoned her job. According to the City, Gallimore took sick leave on May 6th, 7th, and 10th, but when she returned to work on May 11th, her supervisor sent her home because Gallimore did not provide "a doctor's note to substantiate her absences." Gallimore did not report to work for the next three days, which the City claims constituted job abandonment and voluntary resignation. But according to Gallimore, she did not stay home voluntarily for those three days. Instead, she says that after she took sick leave her Supervisor, Michael Steele, "refused to allow me to come to work and demanded a doctor's note." She claims that "Steele explicitly ordered me to go home and to remain home and then falsely stated that I abandoned my post."

On May 17, 2021, the City sent Gallimore a letter outlining Gallimore's alleged absences and the City's acceptance of

Gallimore's "voluntary resignation under Administrative Regulation 1-114." Eight months later, on January 13, 2022, the City fired Pate.

On August 9, 2022, Gallimore filed a three-count complaint in the United States District Court for the Southern District of Florida alleging that: (1) the City retaliated against her for filing an EEOC complaint in violation of Title VII; (2) the City discriminated against her on the basis of her age in violation of the ADEA; and (3) the City discriminated against her on the basis of gender in violation of Title VII. After the City moved to dismiss Gallimore's initial complaint, she filed an amended complaint that realleged her initial claims but added a Title VII race discrimination claim against the City too.

The parties proceeded to discovery. On March 30, 2023, the City deposed Gallimore. As relevant here, she made several critical statements during her deposition. First, Gallimore abandoned her race discrimination claim. Second, when asked about her retaliation claim, Gallimore testified in her deposition that she believed that the City "retaliated against me because I filed an EEOC complaint," but that she never told anyone at the City about her EEOC complaint:

> Q: Did you ever have a conversation with anyone at the City regarding your EEOC complaint?
>
> Gallimore: No.
>
> Q: Okay. Did you ever hear anyone discuss your EEOC complaint?

Gallimore: No.

Q: When I say "anyone," I'm talking about anyone at the City, okay?  Is the answer no?

Gallimore: Yes. It is no. No.

On April 14, 2023, the City moved for summary judgment on the remaining counts of Gallimore's amended complaint, arguing that she failed to meet the elements of discrimination or retaliation claims under Title VII or the ADEA.  In Gallimore's response to the City's motion she attached, among other things, (1) her sworn declaration dated May 12, 2023; (2) a copy of James Dobson's verified complaint and sworn declaration that was filed in *Dobson v. City of Opa Locka*, No: 2020-018694-CA-01 (Fla. 11th Cir. Ct.) (Dobson's separate employment discrimination suit against the City); and (3) a copy of John Pate's verified complaint and sworn declaration that was filed in *Pate v. City of Opa Locka*, No: 2022-001586-CA-01 (Fla. 11th Cir. Ct.) (Pate's separate employment discrimination suit against the City).

Gallimore's sworn declaration reiterated many of the same allegations that the City demoted her because of her age and gender and fired her because of her age, her gender, and in retaliation for filing an EEOC complaint.  But as for her retaliation claim, Gallimore's sworn declaration stated, "I told Human Resources Director Kierra Ward when I filed my EEOC Complaint and she said she would discuss it with the Manager because I was complaining about discrimination in my employment."  Gallimore did not explain in her sworn statement why she had denied speaking to

anyone at the City about her EEOC Complaint during her earlier deposition.

Dobson's sworn declaration said that Pate "was not the sole decision maker on police personnel issues and was heavily influenced and intimidate[d] by Mayor [Pigatt] and City Commissioners." Dobson also attested that he "personally observed" times when Mayor Pigatt "at City meetings and in private meetings stated that he wanted younger leadership in the police force." Further, Dobson stated that Gallimore "had an unblemished record of outstanding service," and when the MDPD's assessment was done "there were no criticisms of Sharon Gallimore" and the assessment "was not a basis for any demotions or adverse action against Sharon Gallimore."

Finally, both Pate's complaint and sworn statement alleged that "Commissioner Burke and Mayor Pigatt repeatedly pressured [Pate] to terminate Police Chief James Dobson because of Dobson's refusal to make police personnel moves at their direction in violation of the City Charter."

The district court granted the City's motion for summary judgment on all counts on June 16, 2023. Gallimore timely appealed the district court's decision.

## II.

This Court reviews a grant of summary judgment *de novo*, viewing the facts and drawing all reasonable inferences in favor of the nonmoving party. *Rosario v. Am. Corrective Counseling Servs., Inc.*, 506 F.3d 1039, 1043 (11th Cir. 2007). Summary judgment is

23-12241                Opinion of the Court                    9

appropriate when "there is no genuine dispute as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### A.

Starting with Count I, we are satisfied that the district court correctly granted summary judgment on Gallimore's retaliation claim. Title VII makes it unlawful for an employer to retaliate against an employee "because [she] has opposed any . . . unlawful employment practice." 42 U.S.C. § 2000e-3(a). In the Eleventh Circuit, a Title VII retaliation claim based on circumstantial evidence "is ordinarily analyzed under the *McDonnell Douglas* burden-shifting framework." *Tolar v. Bradley Arant Boult Commings, LLP*, 997 F.3d 1280, 1289 (11th Cir. 2021). However, a Title VII plaintiff can also survive summary judgment if she is able to present a "convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 946 (11th Cir. 2023), *cert. denied*, 145 S. Ct. 154 (2024) (quoting *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)); *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1313 (11th Cir. 2023). Gallimore has failed to meet the requirements of either framework.

i.

In order to meet the *McDonnell Douglas* framework, "the plaintiff first must establish a prima facie case of retaliation by showing that: (1) she engaged in statutorily protected conduct -- that is, conduct protected by Title VII; (2) she suffered an adverse action; and (3) 'there is some causal relationship between the two events.'" *Tolar*, 997 F.3d at 1289 (quoting *Johnson v. Miami-Dade County*, 948 F.3d 1318, 1325 (11th Cir. 2020)).

Once an employee successfully makes a prima facie showing, the burden shifts to the employer to articulate legitimate, non-discriminatory reasons for its actions. *Sullivan v. Nat'l R.R. Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir. 1999). If the employer articulates a legitimate reason, the burden shifts back to the employee to "show that the employer's proffered reasons for taking the adverse action were actually a pretext for prohibited retaliatory conduct." *McCann v. Tillman*, 526 F.3d 1370, 1375 (11th Cir. 2008) (quoting *Sullivan*, 170 F.3d at 1059). In order to do so, a plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Id.* (quoting *Cooper v. S. Co.*, 390 F.3d 695, 725 (11th Cir. 2004)). "If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim." *Chapman v. AI Transp.*, 229 F.3d 1012, 1024–25 (11th Cir. 2000).

The district court granted summary judgment on Gallimore's retaliation claim because it found that she failed to establish the causal element of a prima facie case for Title VII retaliation. The court noted that the only causal evidence Gallimore had proffered was the temporal proximity of some two months between her protected conduct (filing an EEOC complaint) and the adverse employment action (her termination), and held that "[a]lleging temporal proximity alone is insufficient to demonstrate causation for the purposes of a retaliation claim."

This Court has made it clear that "[t]he burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action," *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007), but we have "cautioned that 'mere temporal proximity, without more, must be very close' to suggest causation." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 926 (11th Cir. 2018) (quoting *Thomas*, 506 F.3d at 1364). "[I]n the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law." *Thomas*, 506 F.3d at 1364. While "an employee's termination within days -- or at the most within two weeks -- of [her] protected activity can be circumstantial evidence of a causal connection between the two," *Jefferson,* 891 F.3d at 926, a gap of multiple months, in the absence of some other evidence of retaliation, is too large a temporal gap. *Johnson*, 948 F.3d at 1328 (holding that temporal proximity of nearly two months is "insufficient, standing alone, to establish pretext"); *Thomas*, 506 F.3d at 1364

(holding that a three month period between the protected activity and adverse employment action did not "rise to the level of 'very close,'" and in the absence of other evidence, could not establish a causal connection) (quoting *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)).

The district court correctly determined that Gallimore failed to meet the requirements of the *McDonnell Douglas* framework. This is not a case where temporal proximity alone is sufficient to establish a causal connection between the protected activity and the adverse employment action. Gallimore filed her EEOC complaint sometime in March 2021 and her termination occurred on May 17, 2021.[1] There were roughly two months between her protected conduct and the adverse employment action. "[I]n the absence of other evidence tending to show causation," this temporal gap is insufficient to meet the "burden of causation." *Thomas*, 506 F.3d at 1364.

On appeal, Gallimore argues that she offered causal evidence beyond temporal proximity. She cites to her May 12, 2023, sworn declaration where she claims "that she told Human

---

[1] The City also argues that Gallimore did not suffer adverse employment action because she was not terminated by the City but instead voluntarily resigned by not reporting to work for three days. However, Gallimore contends that her supervisor tricked her into staying home and then claimed she abandoned her job. Accepting Gallimore's testimony as true, as we must when reviewing a grant of summary judgment, the termination of an employee constitutes an adverse employment action for the purposes of Title VII. *See Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).

Resources Director Kierra Ward when she had filed her EEOC Complaint and Ward said she would discuss it with the manager." But this evidence is belied by Gallimore's prior deposition testimony where she clearly and repeatedly denied discussing her EEOC complaint with "anyone at the City."

Although we do not weigh conflicting evidence when reviewing a grant of summary judgment, we have recognized some circumstances where a court may "disregard an affidavit as a matter of law when, without explanation, it flatly contradicts his or her own prior deposition testimony for the transparent purpose of creating a genuine issue of fact where none existed previously." *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1306 (11th Cir. 2016). "When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984). Although "this rule is applied sparingly because of the harsh effect it may have on a party's case," *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1316 (11th Cir. 2007) (citation modified), a "flat contradiction to [an] earlier deposition" that is left unexplained is "inadequate to raise a genuine issue of fact which was denied to exist by the earlier deposition," *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986).

Gallimore's sworn declaration directly contradicts a clear answer she gave multiple times to unambiguous deposition

questions.  When she was deposed, she was asked three times whether she spoke to anyone at the City about her EEOC complaint or whether she had heard anyone discussing her EEOC complaint.  Each time she said no.  Yet just over a month after her deposition, she filed a statement claiming that she spoke with Ward about her EEOC complaint.  Gallimore offers no explanation for this inconsistency with her prior testimony, and we see no reason to credit a transparent design to create a genuine issue of fact.

In short, the only evidence Gallimore has offered of a causal connection between her protected conduct and the adverse employment action is a temporal gap of several months.  She has not provided us with any other causal evidence that would support a jury's finding that the City retaliated against Gallimore because she filed an EEOC complaint.  She therefore failed to meet the *McDonnell Douglas* standard for Title VII retaliation.

ii.

Gallimore also has failed to present "a convincing mosaic of circumstantial evidence" that would allow a reasonable jury to infer retaliation by the City.  *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019) (*Lewis II*) (citation omitted).

"A plaintiff proving her case through the convincing mosaic standard may point to any relevant and admissible evidence." *Tynes*, 88 F.4th at 946 n.2.  "Evidence that is likely to be probative is evidence that demonstrates, among other things, (1) suspicious timing, ambiguous statements, or other information from which discriminatory intent may be inferred, (2) systematically better

treatment of similarly situated employees, and (3) pretext." *Id.* (citation modified). "[N]o matter its form, so long as the circumstantial evidence raises a reasonable inference that the employer discriminated against the plaintiff, summary judgment is improper." *Smith*, 644 F.3d at 1328.

Gallimore has failed to provide sufficient circumstantial evidence for a reasonable jury to infer that the City fired her in retaliation for her EEOC complaint. Again, Gallimore's claim of retaliation turns on the observation that she was terminated some two months after she filed her EEOC complaint. But, as we've explained, a temporal gap of two months is insufficient standing alone to show that an adverse employment action was taken in retaliation for an employee's protected conduct. Gallimore has offered no statements about her EEOC complaint by her manager, or from anyone else, nor has she proffered any other circumstantial evidence that would allow a jury to infer that her termination was retaliation for her protected conduct. Other than Gallimore's belated declaration that she spoke with Kierra Ward about her EEOC complaint, which we have disregarded, there is no evidence that anyone at the City even knew about Gallimore's EEOC complaint.

Since Gallimore has failed to create a triable issue concerning the City's retaliatory intent, summary judgment was properly granted on her Title VII retaliation claim.

B.

Turning to Gallimore's age discrimination claim, however, we conclude that the district court erred in granting the City's motion for summary judgment on this charge.

The ADEA forbids age discrimination in the employment of persons of at least forty years of age. *See* 29 U.S.C. § 631. A plaintiff can show age discrimination "through either direct or circumstantial evidence." *Liebman v. Metro. Life Ins. Co.*, 808 F.3d 1294, 1298 (11th Cir. 2015). Where there is no direct evidence of discrimination, a plaintiff can survive summary judgment either by establishing the elements of the *McDonnell Douglas* test for discrimination or by presenting a "convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Tynes,* 88 F.4th at 946 (citation omitted). Gallimore presented circumstantial evidence sufficient to meet her burden as to both methods.

i.

Turning first to the *McDonnell Douglas* test, one way a plaintiff can establish a prima facie case under the ADEA with circumstantial evidence is by proving "(1) that [she] is a member of the protected group; (2) that adverse employment action was taken against [her], e.g. discharge, demotion, or failure to hire; (3) that [she] was replaced by a person outside the protected group; and (4) that [she] was qualified for the position for which [she] was rejected." *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989) (footnote omitted). However, as for the final prong, "[o]ur caselaw quite clearly instructs that plaintiffs, who have been discharged

from a previously held position, do not need to satisfy the *McDonnell Douglas* prong 'requiring proof of qualification'" because "where a plaintiff has held a position for a significant period of time, qualification for that position sufficient to satisfy the test of a prima facie case can be inferred." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1360 (11th Cir. 1999) (quoting *Young v. Gen. Foods Corp.*, 840 F.2d 825, 830 n.3 (11th Cir. 1988)).

Once a plaintiff establishes a prima facie case of discrimination, it "in effect creates a presumption that the employer unlawfully discriminated against the employee," and "shift[s] to the employer the burden of producing legitimate, nondiscriminatory reasons for the challenged employment action." *Combs*, 106 F.3d at 1528 (citation omitted). To satisfy this burden, "the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had *not* been motivated by discriminatory animus." *Id.* (citation omitted). Once an employer does so, the presumption of discrimination is eliminated, and "the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Id.*

As we see it, Gallimore provided sufficient evidence to establish a prima facie case of age discrimination under the ADEA. First, she was forty-nine years old at the time and therefore part of the protected class. Second, adverse employment actions were

taken against her when she was demoted and then terminated from the police force.  Third, she was replaced by someone outside of the protected group because Jenkins was in her mid-thirties at the time she took Gallimore's position.  Fourth, Gallimore was qualified for the position she lost because she successfully held it for over twenty years.

The district court erroneously found that Gallimore failed to establish a prima facie case of age discrimination because she did not identify a valid comparator.  However, our case precedent has made it clear that a Plaintiff does not need to identify a comparator if she shows that she was "replaced by or otherwise lost a position to a younger individual." *Chapman*, 229 F.3d at 1024; *see also Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1289 (11th Cir. 2003) (explaining that *McDonnell Douglas* requires a plaintiff to show she "was replaced by a person outside [her] protected class *or* was treated less favorably than a similarly-situated individual outside [her] protected class") (emphasis added)).  Gallimore was replaced by someone who was younger than forty years old and therefore outside of the ADEA's protected class.

Since Gallimore has established a prima facie case of age discrimination under the ADEA, we turn to the City's burden to provide a non-discriminatory reason for her demotion and subsequent termination.  To explain Gallimore's demotion, the City points to the assessment of its police department conducted by the MDPD, and notes its finding that "a majority of the feedback suggested that

the [City's police] department [was] beset by a lack of effective communications between supervisors and employees, a lack of adherence to rules, policies, and job descriptions, an overabundance of supervisors as compared to rank-and-file employees, inconsistent or non-existent accountability, unacceptable levels of sick leave use, and a scarcity of strategy and planning in guiding the department's day-to-day operations." As for Gallimore's termination, the City claims that on May 11, 2021, Gallimore was sent home from work by her supervisor for failing to provide "a doctor's note to substantiate her absences from earlier in the week," and then she did not call out or report to work for the next three days, which constituted job abandonment.

The City provided legitimate, non-discriminatory reasons for Gallimore's demotion and subsequent termination which could permit a trier of fact to reasonably conclude that the City's actions were not motivated by discriminatory animus. However, Gallimore also introduced evidence sufficient for a reasonable factfinder to find that those reasons were pretextual and the real reason for the City's adverse employment actions was age discrimination. First, according to Gallimore's sworn statement and deposition testimony, the Mayor and City Commissioners made multiple discriminatory remarks about her age and their desire to hire younger police officers. These remarks included Mayor Pigatt saying that he "wanted younger people in positions of leadership in the police department" and that "the City needed to bring in much younger and 'more energetic'" employees, as well as City Commissioner Alvin Burke telling Gallimore "that people were tired of the same 'old

people' and that if the police department had young officers, they would not have the health issues that older officers like [Gallimore] had."

Gallimore also pointed out that the MDPD's assessment was made more than five months before her demotion and a year before her termination, and she offered evidence that after the assessment both Pate and Dobson assured her that her performance as Assistant Chief of Police "was outstanding" and that the assessment would not impact her job "in any way, shape or form." Gallimore also never wavered from her claim that she was tricked into staying home for three days so that the City could falsely claim she abandoned her job.

Gallimore's claims are reinforced by Dobson's sworn declaration that Mayor Pigatt stated several times that he wanted to hire younger police officers, as well as Dobson's testimony that the MDPD's assessment "was not a basis for any demotions or adverse action against Sharon Gallimore." Gallimore, Dobson, and Pate all also agree that the City Commissioners and the Mayor improperly pressured Pate to make police personnel moves. Accepting this evidence to be true, as we must at this stage in the proceedings, a reasonable jury could find that the City's proffered reasons for Gallimore's demotion and then termination were pretexts for age discrimination.

Because Gallimore properly met the elements of the *McDonnell Douglas* framework, we think it was error to grant the City's motion for summary judgment on her age discrimination claim.

ii.

There is a second, independent reason why it was error to grant summary judgment on this claim. As we've observed, the failure to meet the elements of the *McDonnell Douglas* framework does not necessarily doom a Plaintiff's age discrimination claim. "[E]stablishing the elements of the *McDonnell Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case." *Smith*, 644 F.3d at 1328. "Even without similarly situated comparators, the plaintiff will always survive summary judgment if he or she presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Lewis II,* 934 F.3d at 1185 (citation modified). Again, a triable issue "exists if the record, viewed in a light most favorable to the plaintiff, presents 'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'" *Smith*, 644 F.3d at 1328 (citation modified).

Gallimore provided a mosaic of circumstantial evidence that raises a triable issue concerning the City's discriminatory intent. Again, she has presented discriminatory statements demonstrating ageist animus on the part of the Mayor and City Commissioners. She has offered evidence that the Mayor and City Commissioners improperly pressured her supervisor, Pate, to demote and terminate both her and Dobson. Dobson, like Gallimore, was forty-nine years old when the City terminated him. Finally, if we accept as true, as we must, Gallimore's testimony that the City tricked her

into staying home in order to falsely claim that she abandoned her job, there is sufficient evidence to permit a reasonable jury to find that the City's offered justification for her termination is pretextual. This evidence, when viewed in whole, "coalesces into a mosaic of circumstantial evidence sufficient to create a triable issue of material fact" as to whether the City was motivated by age discrimination when it demoted and then terminated Gallimore. *Lewis II*, 934 F.3d at 1189.

For all these reasons, we find that the district court erred by granting the City's motion for summary judgment on Gallimore's age discrimination claim.

## C.

Turning to Gallimore's final claim, gender discrimination, the district court properly granted summary judgment for the City. Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). As with age discrimination and retaliation claims, this Court typically follows the same *McDonnell Douglas* framework when evaluating a claim of sex discrimination based on circumstantial evidence. A plaintiff can also survive summary judgment by presenting "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination." *Lewis II*, 934 F.3d at 1185 (citation omitted). The district court properly granted summary judgment on Gallimore's gender

discrimination claim, because her evidence of sex discrimination did not meet either standard.

Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case of discrimination, which includes demonstrating either that she was replaced by someone of a different gender or that she was treated less favorably because of her gender when compared to similarly situated male employees. *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802 (1973). The comparators need not be "identical" to the plaintiff but for their gender, but they must be "similarly situated in all material respects." *Lewis v. City of Union City*, 918 F.3d 1213, 1227–28 (11th Cir. 2019) (en banc) (*Lewis I*). Generally, a similarly situated comparator will have: (1) engaged in the same basic conduct as the plaintiff; (2) been subjected to the same employment policy, guideline, or rule as the plaintiff; (3) worked under the same supervisor as the plaintiff; and (4) shared the plaintiff's employment or disciplinary history. *Id*. In other words, "a plaintiff and her comparators must be sufficiently similar, in an objective sense, that they 'cannot reasonably be distinguished.'" *Id*. at 1228 (quoting *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 231 (2015)).

Gallimore failed to meet this element of the *McDonnell Douglas* framework. When Gallimore was demoted from Assistant Chief of Police, she was replaced by a woman, and there is no evidence in this record that when Gallimore was terminated as a road officer her position was taken by a man. As for comparators, Gallimore argues on appeal that "an abundance of males (Bosque,

Perez) who were fired and criminally prosecuted and had a record for misconduct, replaced her in senior police positions." But the record is unclear as to what positions these men held, what their responsibilities were, or who their supervisors were when they were promoted. We cannot tell whether they shared Gallimore's employment history or engaged in the same basic conduct as she. Gallimore failed to demonstrate that she and her comparators were "similarly situated in all material respects." *Lewis I*, 918 F.3d at 1229. Thus, the district court did not err when it determined that Gallimore failed to meet the elements of the *McDonnell Douglas* framework because she did not establish a prima facie case of gender discrimination. Nor has Gallimore offered any other evidence that would create "a convincing mosaic of circumstantial evidence" sufficient to allow a reasonable factfinder to infer intentional discrimination on account of gender. *Lewis II*, 934 F.3d at 1185 (citation omitted).

**AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.**